Patrick J. Somers (SBN 318766)
Emma M. Tehrani (SBN 329603)
KENDALL BRILL & KELLY LLP
10100 Santa Monica Blvd., Suite 2500
Los Angeles, California 90067
Tel: (310) 272-7918
Fax: (310) 556-2705
psomers@kbkfirm.com
etehrani@kbkfirm.com

*Attorneys for Defendant Virtu Financial, Inc.*

[*Additional counsel listed on signature page*]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIA BROADBAND, INC. (AABB) | Case No. 2:26-cv-00175-FLA-MAA |
| Plaintiff, | **MOTION TO DISMISS BY DEFENDANTS VIRTU FINANCIAL, INC. AND GTS SECURITIES** |
| v. | |
| VIRTU FINANCIAL, INC., GTS SECURITIES, G1 EXECUTION SERVICES, DOES 1-50, inclusive, and DOE Business Entities 1-50, inclusive, | *[Concurrently filed with Request for Judicial Notice; Declaration of Daniel S. Sinnreich; and [Proposed] Order]* |
| Defendants. | Date:      August 14, 2026 |
| | Time:      1:30 P.M. |
| | Location:   First Street U.S. Courthouse, Courtroom 6B |
| | 350 W 1st Street, 6th Floor Los Angeles, CA 90012 |
| | Action Filed:   January 7, 2026 |
| | Trial Date:    None Set |
| | Assigned to Hon. Fernando L. Aenlle-Rocha |

Case No. 2:26-cv-00175-FLA-MAA

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT

**PLEASE TAKE NOTICE** that on August 14, 2026, at 1:30 p.m. or as soon thereafter as the matter may be heard before the Honorable Fernando L. Aenlle-Rocha of the United States District Court for the Central District of California, in Courtroom 6B on the 6th Floor of the United States Courthouse located at 350 W. 1st Street, Los Angeles, California 90012, Defendants Virtu Financial, Inc. and GTS Securities shall move this court for an order dismissing the case with prejudice.

This motion is based on the following grounds:

(1) Plaintiff fails to state a claim for market manipulation under Section 10(b) of the Securities Exchange Act of 1934, SEC Rule 10b-5 promulgated thereunder, and Section 9(a)(2) of the Exchange Act, because the Complaint fails to plead each of the essential elements of loss causation, reliance, a manipulative act, and a strong inference of scienter, with the particularity required by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act.

(2) Plaintiff fails to state a claim for market manipulation under Nevada Revised Statutes § 90.570 because the Complaint fails to plead manipulative conduct with the particularity required by Federal Rule of Civil Procedure Rule 9(b) and Nevada state law.

## LOCAL RULE 7-3 STATEMENT

This motion is made following the conferences of counsel pursuant to L.R. 7-3, which took place by telephone on February 24, 2026 and March 11, 2026.

-1-          Case No. 2:26-cv-00175-FLA-MAA

Dated:       New York, NY
             April 24, 2026

Respectfully submitted,

By: */s/ Patrick J. Somers*

Andrew G. Gordon (*pro hac vice*)
Audra J. Soloway (*pro hac vice*)
Alison R. Benedon (*pro hac vice* application forthcoming)
Daniel S. Sinnreich (*pro hac vice*)
Daniel A. Negless (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 6th Avenue
New York, NY  10019
agordon@paulweiss.com
asoloway@paulweiss.com
abenedon@paulweiss.com
dsinnreich@paulweiss.com
dnegless@paulweiss.com

Patrick J. Somers (SBN 318766)
Emma M. Tehrani (SBN 329603)
KENDALL BRILL & KELLY LLP
10100 Santa Monica Blvd., Suite 2500
Los Angeles, California  90067
Tel: (310) 272-7918
Fax: (310) 556-2705
psomers@kbkfirm.com
etehrani@kbkfirm.com

*Attorneys for Defendant Virtu Financial, Inc.*

By: */s/ Peter G. Wilson*

Patrick Malley Smith  (SBN 326644)
Ashley Taylor Brines (SBN 322988)
KATTEN MUCHIN ROSENMAN LLP
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA  90067-5010
Tel: 310-788-4400
Fax: 310-788-4471
patrick.smith@katten.com
ashley.brines@katten.com

Peter G. Wilson (*pro hac vice*)
Benjamin Levine (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL  60661
Tel: 312-577-8106
peter.wilson@katten.com
benjamin.levine@katten.com

*Attorneys for Defendant GTS Securities*

-2-                Case No. 2:26-cv-00175-FLA-MAA

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................7

BACKGROUND .........................................................................................................9

I.      The Parties .....................................................................................................9

II.     The Complaint ..............................................................................................10

III.    Causes of Action ..........................................................................................13

ARGUMENT.............................................................................................................13

I.      Plaintiff Fails to State a Claim for Market Manipulation Under Sections 9(a) and 10(b) of the Exchange Act.....................................................................13

     A.      The Complaint Fails to Adequately Allege Loss Causation or Economic Loss...................................................................................14

     B.      The Complaint Fails to Adequately Allege Reliance. ........................15

     C.      The Complaint Fails to Adequately Allege a Manipulative Act. ........16

     D.      The Complaint Fails to Allege a Strong Inference of Scienter............24

II.     The Complaint Fails to State a Claim for Market Manipulation Under NRS § 90.570. ....................................................................................................27

CONCLUSION..........................................................................................................28

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 10

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
357 F. Supp. 2d 712 (S.D.N.Y. 2005), *aff'd*, 493 F.3d 87 (2d Cir. 2007) ............................. 15

*ATSI Communications, Inc.* v. *Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ..................................................................... 10, 18, 20

*In re Bank of Am. Corp.*,
2011 WL 740902 (N.D. Cal. Feb. 24, 2011) .......................................................... 10

*Bodri* v. *GoPro, Inc.*,
252 F. Supp. 3d 912 (N.D. Cal. 2017) .................................................................... 18

*Coleman* v. *PNC Bank, N.A.*,
2025 WL 3101996 (D. Nev. Nov. 5, 2025) ............................................................ 22

*Commodity Futures Trading Comm'n* v. *Shak*,
2023 WL 5717289 (D. Nev. Sept. 5, 2023) ............................................................ 12

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009) ............................................................................. 3

*Desai* v. *Deutsche Bank Securities Ltd.*,
573 F.3d 931 (9th Cir. 2009) ................................................................................. 10

*SEC* v. *Francisco*,
262 F. Supp. 3d 985 (C.D. Cal. 2017) .................................................................... 15

*Gamma Traders I LLC* v. *Merrill Lynch Commodities, Inc.*,
41 F.4th 71 (2d Cir. 2022) ....................................................................................... 9

*GFL Advantage Fund, Ltd.* v. *Colkitt*,
272 F.3d 189 (3d Cir. 2001) ................................................................................... 12

*Harrington Global Opportunity Fund, Ltd.* v. *CIBC World Markets Corp.*,
585 F. Supp. 3d 405 (S.D.N.Y. 2022) .............................................................. 16, 18

*Irving Firemen's Relief & Ret. Fund* v. *Uber Techs., Inc.*,
998 F.3d 397 (9th Cir. 2021) ................................................................................ 8, 9

*Kearns* v. *Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ........................................................................ *passim*

-4-   Case No. 2:26-cv-00175-FLA-MAA

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

*Kessev Tov, LLC* v. *Does(s)*,
2022 WL 2356626 (N.D. Ill. June 30, 2022) ........................................................................ 20

*Kunio Tsutsumi* v. *Advanced Power Techs., Inc.*,
2013 WL 1953716 (D. Nev. May 10, 2013) ....................................................................... 7, 22

*In the Matter of Jaycee James*,
SEC Release No. 649, 2010 WL 3246170 (Apr. 2, 2010). ....................................................... 4

*Metzler Inv. GMBH* v. *Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ........................................................................................ 8, 19

*Mullen Automotive, Inc.* v. *IMC Financial Markets*,
2025 WL 951501 (S.D.N.Y. Mar. 28, 2025) ................................................................... 16, 17

*Nguyen* v. *Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ............................................................................................... 18

*Phunware, Inc.* v. *UBS Secs. LLC*,
2024 WL 1465244 (S.D.N.Y. Apr. 4, 2024) ............................................................... *passim*

*Phunware, Inc.* v. *UBS Secs. LLC*,
2025 WL 2636568 (S.D.N.Y. Sept. 12, 2025) ............................................................ *passim*

*Prime Mover Capital Partners LP* v. *Elixir Gaming Techs., Inc.*,
898 F. Supp. 2d 673 (S.D.N.Y. 2012) .................................................................................. 22

*Prodanova* v. *H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021) ............................................................................................. 19

*Ruiz* v. *Laguna*,
2007 WL 1120350 (S.D. Cal. Mar. 28, 2007) ..................................................................... 13

*ScripsAmerica, Inc.* v. *Ironridge Global LLC*,
119 F. Supp. 3d 1213 (C.D. Cal. 2015) ...................................................................... *passim*

*Set Cap. LLC* v. *Credit Suisse Grp. AG*,
996 F.3d 64 (2d Cir. 2021) ..................................................................................................... 7

*Shivers* v. *Arizona*,
670 F.2d 826 (9th Cir. 1982) ............................................................................................... 21

*In re Sona Nanotech, Inc. Sec. Litig.*,
562 F. Supp. 3d 715 (C.D. Cal. 2021) ................................................................................. 19

*Stoyas* v. *Toshiba Corp.*,
896 F.3d 933 (9th Cir. 2018) ................................................................................................. 4

-5-   Case No. 2:26-cv-00175-FLA-MAA

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

*Tellabs, Inc.* v. *Makor Issues & Rights Ltd*,
   551 U.S. 308 (2007) ............................................................................................ 18, 21

*In re Turbodyne Techs., Inc. Sec. Litig.*,
   2000 WL 33961193 (C.D. Cal. Mar. 15, 2000) ........................................................ 9

*Zucco Partners, LLC* v. *Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ........................................................................... 19, 20

**Statutes**

15 U.S.C. §§ 78c ....................................................................................................... 3

15 U.S.C. § 78u-4, PSLRA ................................................................. 2, 8, 18, 19, 22

Securities Exchange Act of 1934 § 9(a), 15 U.S.C. § 78j(b) ..................................... 7

Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b) ................................ 6, 7

Nev. Rev. Stat. § 90.570 (2025) .................................................................... 7, 21, 22

**Other Authorities**

17 C.F.R. § 240.15c3-1(c)(8) ..................................................................................... 3

Fed. R. Civ. P. 8 ...................................................................................................... 10

Fed. R. Civ. P. 9(b) .......................................................................................... *passim*

Fed. R. Civ. P. 11 ...................................................................................................... 6

SEC Rule 10b-5 ................................................................................................... 7, 22

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Defendants Virtu Financial, Inc. ("Virtu" or "NITE") and GTS Securities ("GTS," and collectively, "Defendants") respectfully submit this memorandum in support of their motion to dismiss the complaint of Plaintiff Asia Broadband, Inc. ("AABB") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA").

## PRELIMINARY STATEMENT

This is a purported "market manipulation" case. The plaintiff, AABB, is currently a speculative crypto company that has generated no revenue from its crypto operations, has repeatedly changed its business model, and has issued common stock whose price has hovered around two cents per share on the "over-the-counter" ("OTC") markets since 2023. Defendants Virtu and GTS are financial institutions with no business relationship with AABB. Rather, they are market makers, *i.e.*, financial firms that publish market offers to buy and sell tens of thousands of different securities, including AABB's stock, to facilitate transactions by investors and "make a market" for those securities. In this lawsuit, ignoring the disastrous state of its own business, AABB remarkably contends that it is Defendants' fault that its share price is so low. Defendants allegedly "manipulated" AABB's already negligible two-cent share price downward through unexplained acts at unspecified times during June, July, and December 2025. This claim is unsupported, unpleaded, and defies common sense.

To survive a motion to dismiss, Plaintiff had to plead with particularity that (i) Defendants engaged in a manipulative act, (ii) with scienter, (iii) Plaintiff relied on an assumption that the market was free of manipulation, and (iv) Plaintiff was damaged by Defendants' manipulation. But the Complaint offers no coherent factual allegations explaining *what* Defendants did that was manipulative, *when* the manipulation occurred, *what* impact it had on Plaintiff's stock price, *how* it differed from ordinary market making activity, and *how* Plaintiff was damaged. In fact, two

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

required elements are entirely absent: the Complaint contains *no theory* of causation or reliance. Those pleading defects are fatal, and the Court should end its analysis there and dismiss the Complaint.

But there are additional reasons why the Court should dismiss the Complaint with prejudice. Although the Complaint is filled with meaningless, pseudo-technical jargon—accusing Defendants of things like "micro stuffing," "synchroniz[ing] their layer rotations," "tape painting," and "endgame steering"—these buzzwords are unsupported by the particularized facts required to plead a "manipulative act" under the PSLRA and Rule 9(b). As to scienter, the Complaint contains *no facts* about either Defendant's motive, and pays only lip service to their knowledge or intent, falling far short of pleading the required "strong inference" that Defendants acted with scienter.

The Complaint is also riddled with confusing errors and inconsistencies that make it impossible to discern what Defendants allegedly did wrong. It references nine "exhibits" that do not exist; eighteen "statements" in a case that does not involve statements; a third "defendant" against whom there are no allegations; a "class period" even though this is not a class action; and additional "data" that Plaintiff withheld for "subsequent pleadings," with no explanation of what the data shows or why it was withheld. It contradicts its price suppression theory by alleging that Defendants' conduct also "inflated" AABB's share price. And Plaintiff's counsel has admitted that the 169 pages of "exhibits" attached to the Complaint—themselves a confusing morass of impenetrable and repetitive jargon—were "prepared with the assistance of a generative AI model." In short, the Complaint fails to plead every element of a market manipulation claim. It should be dismissed with prejudice.

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## BACKGROUND

### I.      The Parties

Defendants.   Virtu and GTS are SEC-registered broker-dealers that trade securities in several markets (including OTC markets) to facilitate order flow from clients, to make markets, and for their own proprietary accounts.  *See* ¶¶ 2-4[1]; 15 U.S.C. §§ 78c(a)(4), (a)(5).  As market makers, Defendants regularly publish "bona fide, competitive bid and offer quotations" at which they stand "ready, willing[,] and able" to effectuate transactions.  17 C.F.R. § 240.15c3-1(c)(8); ¶¶ 2-4.  A "bid" quotation is an offer to buy a certain amount of stock at a certain price, whereas an "ask" or "offer" quotation offers to sell a certain amount of stock at a certain price. *See In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 613-14 (C.D. Cal. 2009).  Market makers "help[] establish a market for securities" and provide liquidity in a market to ensure buyers and sellers can transact "at a price that reflects information rather than a party's urgent need to buy or sell" and generally "help trades . . . execute more smoothly." *See id*.

Plaintiff.   AABB describes itself as "a resource company engaged in digital asset development, precious metals operations, and technology-based financial services."  ¶ 1.  In reality, AABB has repeatedly rebranded itself and cycled through disparate business ventures—beginning as an e-learning program in China that made minimal revenue, followed by nearly a decade of dormancy; then entering the mining industry; and, most recently, offering crypto products.[2]  AABB previously attempted to effectuate a public offering of its common stock, but the SEC determined that

---

[1]  "¶" refers to the Complaint, "Ex." to exhibits to the concurrently filed Sinnreich Declaration, and "Compl. Ex." to the Complaint's exhibits.  All emphases are added and internal quotations marks/citations are omitted unless otherwise noted.

[2]  *See* ¶¶ 1, 25; Ex. C at 70; Ex. D at 10 ("To date, we have generated nominal revenues from our operation."); Ex. E at 15, 22 (reporting net losses and no significant changes from 2004 to 2014).

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

AABB's registration "never became effective."[3]  Currently, AABB trades on OTC Pink, a highly-speculative OTC market that imposes the lowest tier of financial standards and public disclosures.  *See* ¶ 26; Ex. E at 22.[4]  AABB has no auditor and publishes unaudited financial disclosures.  *See* Ex. E at 9.

By its own unaudited estimate, AABB reports *zero revenues* from crypto products and services in 2024 and 2025, even though it incurred "a total of $3,043,314 in development costs associated with the cryptocurrency token, NFT collection, digital wallet and infrastructure."  Ex. E at 12, 26.  In its 2025 annual report, AABB reported it has "suffered losses in the current quarter and in the past," "has no assurance of future profitability," and has "some concern about [its] ability to continue."  *Id.* at 23.

## II.    The Complaint

The Complaint is nearly impossible to parse.  It is heavy on technical jargon—accusing Defendants of "spoofing," "bid layering," "wash trading," "naked short selling," "quote stuffing," and "micro stuffing"—but contains almost no actual *facts*.  ¶¶ 9-15.  Construed charitably, the Complaint appears to allege that Defendants engaged in "market manipulation" in June, July, and December 2025 that purportedly negatively impacted AABB's share price.  *See* ¶¶ 32-56.

The Complaint does not actually identify any specific manipulative conduct nor how any alleged misconduct affected AABB's share price.  Instead, it offers only vague references to Defendants' isolated quotes for AABB stock on OTC markets during three months.  *See*  ¶¶ 32, 36, 40-42, 47-49.  The Complaint then makes the conclusory and unsupported allegation that Defendants' quotes were not bona fide but instead meant to manipulate AABB's stock.

For instance, the Complaint alleges that sometime in "July 2025," GTS

---

[3]   *See generally* Exs. A & B; *In the Matter of Jaycee James*, SEC Release No. 649, 2010 WL 3246170, at *16-17 (Apr. 2, 2010).

[4]   *See also Stoyas* v. *Toshiba Corp.*, 896 F.3d 933, 946 n. 15 (9th Cir. 2018).

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

"repeatedly adjusted its bid [of AABB stock] at $0.0262, increasing its displayed [bid] size from 16,000 to 50,000 shares during volume builds," while Virtu "simultaneously layered asks in the $0.0294-$0.0300 range, padding resistance levels and preventing natural price discovery." ¶ 36. As another example, the Complaint alleges that, at unspecified times in "July 2025," Virtu "oscillat[ed] its displayed size [of AABB stock] from 16,000 to 50,000 shares," "at $0.0262," which was "timed perfectly to fade upward momentum and induce micro-reversals." ¶ 47.

But stripped of technobabble, the Complaint simply describes in general terms that Defendants placed and adjusted quotes in OTC markets for AABB stock during three months, without explaining how this conduct—the core part of a market maker's job—was fraudulent, manipulative, or impacted AABB's stock.

Plaintiff purports to support its allegations with twenty numbered exhibits spanning 169 pages—themselves indecipherable, laden with jargon, and devoid of facts. *See infra* at 14-15. The exhibits allegedly describe trade activity derived from "video" recordings that Plaintiff's counsel supposedly watched but did not append to the Complaint, *see* ¶¶ 21-24, and social media posts from an X user named "@memestocked," *e.g.*, Compl. Ex. 16 at 166, Compl. Ex. 19 at 194, Compl. Ex. 20 at 204. Some exhibits summarize this purported trade activity in tables, but the tables do not explain who executed any alleged trade. Instead, the tables list supposed trades in AABB stock and assert that *every* identified trade was manipulative by describing the trades with confusing terms that Plaintiff does not define. *See, e.g.*, Compl. Ex. 2 at 47-52 (purporting to list AABB trades by unspecified entities and describing trades as "endgame steering," "pinning," "dilution spotting," "tape painting," "ask control," "reactive stuffing," "pivot trade," and "tiny print").

On April 20, 2026, Defendants' counsel emailed Plaintiff's counsel to express concern that the exhibits were created with the use of generative AI. *See* Ex. G. On April 21, 2026, Plaintiff's counsel responded that, while the "underlying information" was "traceable" to "raw data," Plaintiff "used AI to create the exhibits."

-11-    Case No. 2:26-cv-00175-FLA-MAA

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Plaintiff's counsel did not represent that counsel had made any effort to review any part of the voluminous AI-generated exhibits to confirm their accuracy.[5]

The Complaint also alleges no facts supporting causation or damages. It offers the contradictory assertions that Defendants' conduct somehow both "artificially depressed" and "artificially inflated" AABB's share price," ¶¶ 23, 160, and does not explain how any purported manipulation on any particular day caused it damages. Plaintiff does not claim that it even purchased or sold its own shares. And Plaintiff omits that its share price has traded between approximately $0.01 and $0.03 since 2023, and remained in this range between June and December 2025 during the alleged wrongdoing. Ex. F.

Finally, the Complaint's inconsistencies underscore its haphazard nature. The Complaint repeatedly refers to nine lettered exhibits (Exhibits A through I) that are not attached to the Complaint (*e.g.*, ¶¶ 108, 111, 120, 123, 133, 142, 164, 178, 181), and makes twelve references to a "Class Period" even though this is not pleaded as a class action. *E.g.*, ¶¶ 1-2, 21-22. The case caption identifies "G1 Execution Services, LLC" as a defendant, but the Complaint never mentions that entity other than listing it as a party. *See* ¶ 4.[6] And although Plaintiff claims it has "data" showing that "Defendants' malfeasance dates back to 2021," Plaintiff inexplicably states it is withholding this "data" until "subsequent pleadings." ¶ 56.

---

[5] Magistrate Judge Audero's Individual Procedures, which the parties were directed to review, ECF No. 7, require "any party who uses generative artificial intelligence" to attach a declaration "disclosing the use of artificial intelligence and certifying that the party has reviewed the source material and verified" its accuracy and compliance with Rule 11 obligations. Plaintiff filed no such certification here.

[6] In fact, the Complaint's exhibits suggest that G1 is listed as a party only because Plaintiff incorrectly conflated that entity with Defendant GTS. *Cf.* Compl. Ex. 16 at 167 ("GTSM (G1Execution Services)…") *with* ¶ 3 ("Defendant GTS Securities ('GTSM')…").

-12-     Case No. 2:26-cv-00175-FLA-MAA

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### III.   Causes of Action

Plaintiff alleges that Defendants' manipulative conduct violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (Count I), Section 9(a)(2) of the Exchange Act (Count II), and Nevada state securities laws under NRS § 90.570 (Count VIII).  *See* ¶¶ 75-129, 250-269.  Plaintiff pleads a separate count under Section 9(e) of the Exchange Act (Count III), but Section 9(e) provides a private damages remedy predicated on a willful violation of Section 9(a).  *See* ¶¶ 130-148.  Plaintiff also alleges separate counts for specific categories of market manipulation (Counts IV-VII), ¶¶ 149-249, but such conduct does not give rise to a separate cause of action under federal or Nevada law, and thus these Counts are duplicative of Counts I, II, and VIII.  *See e.g.*, *Kunio Tsutsumi* v. *Advanced Power Techs., Inc.*, 2013 WL 1953716, *6 (D. Nev. May 10, 2013) (analyzing securities fraud claims under a single cause of action pursuant to NRS § 90.570(2), (3)).

## ARGUMENT

### I.   Plaintiff Fails to State a Claim for Market Manipulation Under Sections 9(a) and 10(b) of the Exchange Act.

To plead market manipulation under Section 10(b), Plaintiff must allege "[i] that the defendant engaged in manipulative acts, [ii] that the plaintiff suffered damage, which was [iii] caused by his or her reliance on an assumption that the market was free of manipulation, and [iv] that the defendant acted with scienter."  *ScripsAmerica, Inc.* v. *Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1236 (C.D. Cal. 2015) (cleaned up).  Courts apply the same analysis to market manipulation claims under Section 9(a) and Section 10(b).  *See Phunware, Inc.* v. *UBS Secs. LLC*, 2025 WL 2636568, *3 (S.D.N.Y. Sept. 12, 2025) ("*Phunware II*"); *accord Set Cap. LLC* v. *Credit Suisse Grp. AG*, 996 F.3d 64, 82 (2d Cir. 2021).  Both claims require Plaintiff to plead loss causation—i.e., the causal connection between the alleged manipulative act and Plaintiff's economic loss.  *ScripsAmerica*, 119 F. Supp. 3d at

1235; *Phunware II*, 2025 WL 2636568 at *3.

Plaintiff's market manipulation claims "must satisfy the dual pleading requisites of [Rule] 9(b) and the [PSLRA]." *ScripsAmerica*, 119 F. Supp. 3d at 1233. Rule 9(b) requires Plaintiff to "plead with particularity the time and place of the fraud," *id.*, including "'the who, what, when, where, and how' of the misconduct charged," *Kearns* v. *Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). The plaintiff must also "state with particularity . . . facts giving rise to a strong inference that the defendant acted with the required state of mind," namely, "a mental state embracing intent to deceive, manipulate, or defraud." 15 U.S.C. § 78u-4(b)(2); *ScripsAmerica*, 119 F. Supp. 3d at 1235.

The Complaint should be dismissed with prejudice for failure to adequately plead *any element* of a manipulation claim. Plaintiff does not even attempt to plead a theory of loss causation or reliance, and although the Complaint includes threadbare recitals of the manipulative acts and scienter elements, its conclusory and confusing allegations come nowhere near meeting the heightened pleading standard.

A.   The Complaint Fails to Adequately Allege Loss Causation or Economic Loss.

Plaintiff must plead allegations sufficient to provide Defendants "with notice of what the relevant economic loss might be or of what the causal connection might be between that loss and the [manipulation.]" *Metzler Inv. GMBH* v. *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008). Further, Plaintiff must satisfy Rule 9(b) and plead with particularity "sufficient detail" to give the defendant "ample notice of [the plaintiff's] loss causation theory" and provide the Court "some assurance that the theory has a basis in fact." *Irving Firemen's Relief & Ret. Fund* v. *Uber Techs., Inc.*, 998 F.3d 397, 404 (9th Cir. 2021). The Complaint fails decisively on both fronts.

Plaintiff does not offer *any* theory of its "economic loss" or how Defendants' conduct caused Plaintiff's loss, let alone one that provides sufficient detail to provide

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Defendants "ample notice" or "assurance that [Plaintiff's] theory has a basis in fact." *Id*. The Complaint alleges that Defendants' trading either artificially suppressed or inflated AABB's stock price, causing the stock to trade at distorted prices. ¶¶ 18, 23, 44. Yet the Complaint does not allege that Plaintiff traded shares of its stock *at all*, much less at artificial prices. *See* ¶¶ 32-74. The Complaint does not plead what AABB's unmanipulated stock price was or would have been, how that price was suppressed or inflated, or how Plaintiff experienced any losses or damages. Plaintiff does not identify a single transaction in which it lost money because of Defendants' alleged manipulation. And although the Complaint alleges in passing that Defendants' conduct "impair[ed] the Company's ability to raise capital," ¶ 44, that conclusory allegation is unsupported by a single fact.

Instead, the Complaint recycles purely conclusory statements that the alleged manipulation led Plaintiff to "purchase[] and/or s[ell] securities at artificially inflated and/or depressed prices" or otherwise to "suffer[] substantial financial losses[.]" ¶¶ 18-19; *accord* ¶¶ 88, 95, 102, 113, 125, 136-37, 159-60, 200-01, 212-13, 223-24, 236-37, 248-49, 259-60, 268-69. These threadbare and conclusory allegations cannot meet Plaintiff's obligation to explain how it was injured or how Defendants' conduct caused its injury. *See Gamma Traders I LLC* v. *Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 78, 80-81 (2d Cir. 2022) (rejecting as conclusory theory of loss causation premised on bare allegations that defendants manipulated the market while plaintiff traded securities).

Accordingly, Plaintiff fails to plead loss causation or economic loss, much less with the particularity required by Rule 9(b). *Uber*, 998 F.3d at 404.

**B.      The Complaint Fails to Adequately Allege Reliance.**

To plead the reliance element of a market manipulation claim, Plaintiff "must allege that it relied on an assumption of an efficient market free of manipulation." *ScripsAmerica Inc.*, 119 F. Supp. 3d at 1249. "Rule 9(b) requires that reliance be pleaded with particularity." *In re Turbodyne Techs., Inc. Sec. Litig.*, 2000 WL

33961193, at *13 (C.D. Cal. Mar. 15, 2000). Plaintiff's *only* allegation of reliance is the purely conclusory statement that it "reasonably relied on the integrity of the market when making investment decisions." ¶¶ 86, 93. This is simply the "formulaic recitation of the elements of a cause of action" that is wholly insufficient even under the more lenient Rule 8 pleading standard. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

To the extent Plaintiff seeks to invoke a presumption of reliance for its manipulation claim, that theory is squarely foreclosed by *Desai* v. *Deutsche Bank Securities Ltd.*, which rejected a presumption of reliance based on the "integrity of the market" in "manipulative conduct cases." 573 F.3d 931, 942 (9th Cir. 2009). And to the extent Plaintiff attempts to invoke a "fraud-on-the-market" theory of reliance—which is not pleaded—that theory "is only available" when the plaintiff demonstrates that the security at issue "traded in an efficient market." *ScripsAmerica*, 119 F. Supp. 3d at 1252. That certainly has not been demonstrated here, where Plaintiff does not allege that the market for AABB stock was efficient, and where Plaintiff's "shares trade on the OTC market," which "numerous courts have held . . . is not efficient." *Id.* at 1251-52 (collecting cases).

C.   The Complaint Fails to Adequately Allege a Manipulative Act.

Rule 9(b) requires that a fraud complaint be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124. Under the leading Second Circuit opinion on market manipulation claims—a decision followed by courts in this District—a complaint must specify "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *ATSI Communications, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007); *see In re Bank of Am. Corp.*, 2011 WL 740902, at *9 (N.D. Cal. Feb. 24, 2011); *ScripsAmerica*, 119 F. Supp. 3d at 1240-41. The Complaint does

-16-   Case No. 2:26-cv-00175-FLA-MAA

not provide this information.

i.      *The Complaint Does Not Plead with Particularity "What Manipulative Acts Were Performed."*

The Complaint purports to identify four episodes of market manipulation, but none describes a single manipulative act.

*First*, Plaintiff alleges that in "June 2025," GTS engaged in "dual-side spoofing, flashing large bid and ask sizes without execution intent." ¶ 32. But the only *factual* allegation is that, at some point on June 23, GTS increased its bid at $0.0306 "from 154,000 to 224,000 shares," and that "no corresponding trades executed." *Id.* There are no factual allegations explaining why a market maker increasing its bid size is manipulative, nor supporting the conclusory allegation that GTS lacked "intent" to execute a trade. *Id.* This allegation is also illogical— increasing bid volume reflects buy-side interest and drives a share price *up*, precisely the opposite of Plaintiff's theory that the alleged manipulation drove AABB's share price down. *Cf. Phunware, Inc.* v. *UBS Sec. LLC*, 2024 WL 1465244, at *1 (S.D.N.Y. Apr. 4, 2024) ("*Phunware I*") (defendant allegedly placed large sell orders to induce others to sell, driving the stock price downward). Plaintiff also alleges that, at the same time, Virtu "adjusted its ask levels in rapid succession," but does not support this allegation with any facts, much less explain how adjusting its "ask levels"—it is not clear in which direction or by how much—would be manipulative. The Court need not "accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations." *ScripsAmerica*, 119 F. Supp. 3d at 1233.

*Second*, the Complaint alleges that in "June and July 2025," Defendants "executed a concentrated campaign of manipulative trading" to suppress AABB's price. ¶ 33. But the Complaint never explains what Defendants actually *did* that was manipulative. Plaintiff's assertion that Defendants "inundated the Level-2 order book with large bursts of non-bona fide orders" is conclusory and unsupported by

-17-      Case No. 2:26-cv-00175-FLA-MAA

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

factual allegations. ¶ 34. The Complaint alleges that, at some unspecified point in "July 2025," GTS increased its bid for AABB stock at $0.0262 "from 16,000 to 50,000 shares," while Virtu "layered asks in the $0.0294-$0.0300 range." ¶ 36. But once again, there are no facts explaining why these alleged activities—which amount to the placement of buy and sell orders by market makers—were manipulative. *See GFL Advantage Fund, Ltd.* v. *Colkitt*, 272 F.3d 189, 205 (3d Cir. 2001) (market manipulation requires "something beyond otherwise legal trading"); *Commodity Futures Trading Comm'n* v. *Shak*, 2023 WL 5717289, at *6 (D. Nev. Sept. 5, 2023) ("When evaluating market manipulation claims, courts must differentiate between legitimate trading strategies" that respond to "market forces" from "those designed to manipulate prices and deceive."). Plaintiff's conspiratorial and unintelligible conclusion—that these allegations show that Defendants "built multi-level spoofing structures," "synchronized their layer rotations," "injected artificial selling and resistance behavior," and "reversed upward momentum," ¶ 37—is entirely unsupported and should be rejected.

*Third*, the Complaint alleges that in "December 2025," Defendants "engaged in another intense cluster of spoofing, bid layering, and coordinated wash trading . . . marked by rapid quote flashing, artificial depth creation, and dual-side suppression tactics." ¶ 39. Here, too, there are no *facts* supporting Plaintiff's conclusory assertions. Instead, the Complaint references a "December 2025 pre-market video," which is not attached and the date of which is unspecified, that purportedly showed GTS "increasing" its bid size at $0.0131, while simultaneously "engag[ing] in ask-side spoofing" by posting offers to sell "at $0.0147 and $0.0200." ¶¶ 40-41. Plaintiff claims the video also shows that Virtu quoted both buy-side and sell-side offers during the same "pre-market sequence." ¶ 42. As with all of Plaintiff's allegations, there are no particularized facts distinguishing this conduct from routine market-making activity. *Commodity Futures*, 2023 WL 5717289, at *6.

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

*Fourth*, the Complaint alleges that Defendants engaged in another "cluster of manipulative trading" in purportedly related episodes that occurred five months apart in July and December 2025. ¶¶ 46-54. Plaintiff alleges that, in these two months, Defendants engaged in "coordinated suppression" involving "oscillating" quote sizes "during modest volume surges," and points once again to a handful of instances on unspecified dates at unspecified times when GTS and Virtu displayed bids and/or offers for AABB stock at various prices. *Id.* Plaintiff does not plead any facts distinguishing these alleged acts from legitimate and routine market-making activity.

In lieu of particularized facts, the Complaint relies on unintelligible jargon. For example, Plaintiff alleges that Defendants engaged in "systemic rapid reloads and tiny pivot trades timed to fade momentum." ¶ 243. This statement is meaningless and also unsupported by any *facts*—it does not describe any actual quoting or trading activity, or explain *what* the "rapid reloads" or "tiny pivot trades" were, *when* they occurred, *how* they impacted the market for AABB stock, or *why* they were manipulative. This pattern is repeated throughout the Complaint, which alleges, among many other things, that Defendants' "synchronized adjustments created a persistent artificial ceiling, preventing price elevation beyond short-term micro-bounces," ¶ 42; "create[ed] a tightly controlled artificial channel that forced price stagnation and discouraged legitimate counterparties from trading," ¶ 65; and executed "matched buy/sell clusters" and "synchronized micro-lot prints," ¶ 189. These allegations are pure gibberish and fail to provide the "who, what, when, where, and how" required by Rule 9(b). *Kearns*, 567 F.3d at 1124; *see Ruiz* v. *Laguna*, 2007 WL 1120350, at *19 (S.D. Cal. Mar. 28, 2007) ("subjective characterizations . . . alone do not suffice to justify dragging a defendant past the pleading threshold.").

Finally, after describing the four purported manipulation episodes discussed above, the Complaint repeats the same allegations under confusing headings that refer to 18 numbered "statements." *See* ¶¶ 57-74. But this case is not about "statements." These allegations also make passing references to the Complaint's 20

-19-    Case No. 2:26-cv-00175-FLA-MAA

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

numbered exhibits, but the exhibits do not contain any particularized facts, much less ones that reflect market manipulation.  Instead, the exhibits purport to "summarize" what Plaintiff's counsel "observed" when reviewing an "OTC Level II" "video" that is not appended to the Complaint, *e.g.*, Compl. Ex. 1 at 41, and social media posts by an X user named "@memestocked," *e.g.*, Compl. Ex. 20 at 204.  The exhibits, like the Complaint, are inscrutable and fail to identify any purported misconduct or inform Defendants of what they supposedly did wrong.  For instance:

- The exhibits, like the Complaint itself, rely heavily on meaningless jargon that Plaintiff does not explain. *Supra* pp. 4-5.

- Some exhibits describe conduct that is not attributed to any particular entity, *e.g.*, Compl. Ex. 1 at 42 ("Observed pattern: clusters of small prints during or just ahead of large blocks can function as depth tests or 'probe' activity."), or conduct that is attributed to a *non-Defendant* entity, *e.g.*, Compl. Exs. 15-18 (alleging manipulative conduct by "ASCM," "ETRF," "INTL," and "CSTI").  And the exhibits *acknowledge* that the "OTC Level II" "video" from which they were supposedly sourced does not show "which [market maker] executed each trade."  Compl. Ex. 1 at 41.  Accordingly, although several exhibits include a table that purports to show certain trade activity, none of those trades are ascribed to GTS, Virtu, or any other specific market participant.

- Some exhibits describe conduct that, while attributed to a particular Defendant, is untethered in time.  *E.g.*, Compl. Ex. 2 at 46 ("The video extends this into the open (starting around 09:30 ET), showing fluctuating volume (e.g., from ~37k to ~86k+ across frames) and subtle quote shifts.  GTS and NITE remain persistent: GTS often bids at 0.0306 (10k) or adjusts to 0.0306-0.0317 on ask, while NITE bids at 0.0305 or leads asks at 0.0313-0.0334.").

- The exhibits describe the purported misconduct using hedging language,

-20-                    Case No. 2:26-cv-00175-FLA-MAA
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

explaining that the observed conduct "*may be consistent* with testing liquidity," "*appear[s]* to signal support" and "*may* reinforce the perception of a stable floor." *E.g.*, Compl. Ex. 1 at 42-43. This speculation is no substitute for particularized facts and cannot meet the Rule 9(b) pleading standard. *See SEC* v. *Francisco*, 262 F. Supp. 3d 985, 989 (C.D. Cal. 2017) (dismissing complaint under Rule 9(b) where allegations were "couched in vague, hedging language").

- Several exhibits are illogical or internally inconsistent. For example, some exhibits accuse Defendants, in conclusory fashion, of "wash trading." *E.g.*, Compl. Ex. 3 at 55, 58; Compl. Ex. 12 at 119; Compl. Ex. 13 at 130. But "wash trading" is intended to "create the false appearance of market activity," ¶ 11, which artificially *inflates* a stock price—the opposite of Plaintiff's theory here.

In sum, the exhibits appended to the Complaint are utterly devoid of particularized facts describing Defendants' supposed fraud. Courts routinely reject market manipulation claims premised on exhibits, charts, and trading data where, as here, Plaintiff fails to explain how that data demonstrates Defendants' manipulation. *See ScripsAmerica*, 119 F. Supp. 3d at 1241 (dismissing manipulation claim premised on 200 pages of appended trading data where plaintiff failed to identify "a single transaction as manipulative"); *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 357 F. Supp. 2d 712, 719 (S.D.N.Y. 2005), *aff'd*, 493 F.3d 87 (2d Cir. 2007) (dismissing manipulation claims as insufficiently particularized where complaint "fail[ed] adequately to explain how the data shows manipulation, let alone how it is linked to any of the defendants").

Plaintiff's counsel has also confirmed a fact that is clear from the face of the exhibits—that they "were prepared with the assistance of a generative AI model." Ex. G. There is no indication that Plaintiff or Plaintiff's counsel carefully reviewed all 169 pages of the exhibits and compared them to the supposed "source material"

-21-   Case No. 2:26-cv-00175-FLA-MAA
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

to confirm their accuracy, leaving the Court and Defendants with no way to determine what portion of the exhibits (if any) is based in reality. The Complaint itself appears to be derived from the AI-generated exhibits, raising further questions regarding the accuracy of Plaintiff's claims. This failure independently requires dismissal with prejudice.

> ii.     *The Complaint Does Not Plead with Particularity "When the Manipulative Acts Were Performed."*

The Complaint does not provide the temporal precision that Rule 9(b) demands. The purportedly manipulative conduct is anchored to broad monthly windows, without identifying the specific dates, times, or sequences of the orders. *See* ¶¶ 32-56. For example, the Complaint alleges that in "December 2025" GTS "dramatically increased its displayed bid at $0.0136 from 100,000 to 200,000 shares" during "the opening minutes" of the intraday session. ¶ 43. But it does not specify on what *date* this occurred, at what *time*, how *long* the bid remained available, or *when* (or whether) the quote was withdrawn or resulted in an executed trade. Similarly, Plaintiff alleges that in "July 2025," at some unspecified point, Virtu "repeatedly manipulated the lower bid band at $0.0262, oscillating its displayed size from 16,000 to 50,000 shares during modest volume 23 surges (~56,000 shares)." ¶ 47. Even if the substance of this allegation made sense (it does not), it would still fail to plead a manipulative act because it offers none of the temporal specificity required by Rule 9(b).

This deficiency starkly contrasts with market manipulation cases that have survived a motion to dismiss. In *Harrington Global Opportunity Fund, Ltd.* v. *CIBC World Markets Corp.*, for instance, the complaint identified examples of alleged spoofing events, and pleaded, for each, the exact date and time—down to the millisecond—of every allegedly manipulative quote, executed trade, and cancellation. 585 F. Supp. 3d 405, 416-17 (S.D.N.Y. 2022); *see also Phunware I*, 2024 WL 1465244 at *2 (identifying alleged spoofing episodes with timestamps

down to the second); *Mullen Automotive, Inc.* v. *IMC Financial Markets*, 2025 WL 951501, at *3-4 (S.D.N.Y. Mar. 28, 2025) (same).

Here, in contrast, AABB fails to plead the specific dates and times of any allegedly manipulative quote, when and for how long any manipulative quote impacted the stock price, and any canceled quote or executed trade. In a market where, according to Plaintiff, Defendants operate "high-frequency systems" that leverage "microsecond reaction times," ¶ 35, the Complaint's vague references to quotes placed at unspecified times during month-long windows are plainly not "specific enough to give defendants notice of the particular misconduct." *Kearns*, 567 F.3d at 1124.

iii.   *The Complaint Does Not Plead with Particularity "What Effect the Scheme Had on the Market."*

The Complaint pleads no facts about the *impact* of any purported manipulation on Plaintiff's stock. The closest the Complaint comes is alleging, in purely conclusory fashion, that Defendants' manipulation "artificially suppressed AABB's stock price." *See* ¶ 1; *but see* ¶ 135 (alleging that Defendants' conduct caused AABB's price to be "artificially inflated or depressed"). That generic allegation is not a particularized fact sufficient to satisfy Rule 9(b), and stands in stark contrast to other cases where courts sustained manipulation claims. For instance, the plaintiffs in *Mullen* alleged eight specific spoofing episodes and identified the manipulated stock's "estimated price decline" for each. 2025 WL 951501 at *3; *see also Phunware I*, 2024 WL 1465244 at *1, 4 (alleging that spoofing scheme lowered the issuer's trading price from $1.70 to $1.63 per share). There are no comparable particularized allegations here.

Moreover, the conclusory allegation that Defendants' conduct "suppressed" Plaintiff's share price is inconsistent with the Complaint itself and market realities. As discussed above, several of the allegations in the Complaint—including that Defendants increased their *buy-side* quote volume, *supra* p. 11, and engaged in "wash

-23-                    Case No. 2:26-cv-00175-FLA-MAA

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

trading," *supra* p. 12—are consistent with *inflating* the manipulated stock's price, not deflating it. And it is no accident that Plaintiff fails to *quantify* any purported negative impact on its share price, as its price has hovered between $0.01 and $0.03 during the relevant period and has not experienced a material decline. *Supra* p. 6. Plaintiff accordingly fails to plead the *impact* of any supposed manipulative act with particularity.

### D.     The Complaint Fails to Allege a Strong Inference of Scienter.

The PSLRA imposes an "exacting" pleading standard that is "no small hurdle." *Nguyen* v. *Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020). Plaintiffs must plead "with particularity" facts giving rise to a "strong inference" of scienter—"a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc.* v. *Makor Issues & Rights Ltd*, 551 U.S. 308, 319 (2007). To qualify as "strong," the inference must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314. As the Second Circuit explained in *ATSI*, scienter is *particularly important* in market manipulation cases because it is often "the only factor that distinguishes legitimate trading from improper manipulation." *ATSI*, 493 F.3d at 102.

The Complaint scarcely attempts to plead this essential element of a market manipulation claim, and comes nowhere near meeting the "exacting" standard of pleading particular facts giving rise to a strong inference of scienter.

#### i.     *Plaintiff Does Not Allege Any Motive to Defraud.*

"While the absence of a motive allegation is not fatal, it may significantly undermine a plaintiff's theory of fraud." *Bodri* v. *GoPro, Inc.*, 252 F. Supp. 3d 912, 933 (N.D. Cal. 2017). Here, Plaintiff pleads no facts whatsoever explaining *why* Defendants supposedly manipulated AABB stock. For instance, there are no allegations that either Defendant manipulated AABB's stock in a particular direction and then bought or sold the stock at the manipulated price for profit. In fact, there are no allegations describing *any* trading activity by either Defendant. Once again,

this contrasts with manipulation cases that have survived motions to dismiss. *See, e.g., Harrington*, 585 F. Supp. 3d at 417-18 (pleading particularized facts that defendants placed fake sell orders to spoof the issuer's stock price down and then purchased shares at artificially depressed prices before canceling the fraudulent sell orders); *Phunware I*, 2024 WL 1465244, at *1, *5-6 (same). Plaintiffs' conclusory assertion that Defendants' conduct allowed them to "benefit" or gain an unspecified "financial advantage," ¶¶ 35, 38, cannot satisfy the PSLRA's exacting pleading requirement. *See Prodanova* v. *H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1107 (9th Cir. 2021) (rejecting scienter where financial motive was not "clear").

ii.    *Plaintiff Does Not Plead Particularized Facts Raising a Strong Inference of Recklessness.*

"To meet the PSLRA's high burden for pleading scienter," a complaint "must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Prodanova, LLC*, 993 F.3d at 1108 (9th Cir. 2021). The Complaint contains no such facts. Instead, it alleges in purely conclusory fashion that "Defendant [*sic*] acted with scienter in conducting its spoofing and bid layering activities," ¶¶ 82, 157, 170, and "Defendant [*sic*] acted willfully and intentionally in conducting these manipulative transactions," *e.g.*, ¶ 116. That is not enough to even *plausibly* allege scienter, much less meet the "exacting" pleading requirements of the PSLRA. *See Metzler Inv. GMBH* v. *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008) (plaintiffs may not plead intent in "general terms"); *In re Sona Nanotech, Inc. Sec. Litig.*, 562 F. Supp. 3d 715, 727 (C.D. Cal. 2021) (complaint's "general inference" that defendants knew statements were inaccurate was "woefully insufficient" to demonstrate scienter).

Plaintiff's allegation that Defendants' "high-frequency systems allowed real-time alterations of displayed depth, enabling Defendants to exploit microsecond reaction times unavailable to ordinary investors," ¶ 35, adds nothing. This allegation provides no facts about either Defendant's knowledge of purportedly manipulative

-25-    Case No. 2:26-cv-00175-FLA-MAA

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

quotations or trades. *See Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (scienter requires facts showing a danger "known to the defendant" or which was "so obvious" that defendant must have been aware). Nor does Plaintiff plead any facts about what "systems" Defendants supposedly used to execute their manipulation. The general assertion that Defendants—market makers in the business of trading—used unspecified "systems" to facilitate their market making does not raise a strong inference of fraudulent intent. *See ATSI*, 493 F.3d at 104 ("A strong inference of scienter is not raised by alleging that a legitimate investment vehicle . . . creates an opportunity for profit through manipulation."); *Kessev Tov, LLC* v. *Does(s)*, 2022 WL 2356626, at *8 (N.D. Ill. June 30, 2022) (recognizing the "ubiquity of rapid trading" and granting motion to dismiss). AABB never alleges with particularity how Defendants' use of such technology differs from ordinary market making, nor how Defendants benefited from or were reckless in its use.

> iii. *A Non-Culpable Inference Is More Compelling than Any Fraudulent Inference.*

The scienter inquiry is "inherently comparative" and requires the Court to weigh both the fraudulent and non-fraudulent inferences that can be drawn from the factual allegations, and decide whether a fraudulent inference is more compelling. *Zucco*, 552 F.3d at 991. Here, there is no fraudulent inference to draw from the Complaint's confusing allegations. Plaintiff offers no explanation for *why* Defendants would manipulate this penny stock during three random months in 2025. There is no allegation that either Defendant made money from this senseless conduct. The Complaint is also riddled with contradictions that undermine any effort to plead scienter. For instance, Plaintiff accuses Defendants of engaging in several conflicting manipulation schemes, some of which would drive AABB's share price up by creating the appearance of artificial trading activity (*e.g.*, "wash trading," "bid layering"), some of which would drive AABB's share price down by indicating false sell-side interest (*e.g.*, "ask-side spoofing," "naked short selling"), and some of

which, confusingly, would seem to do both simultaneously (*e.g.*, "dual-side spoofing," which supposedly involves "flashing large bid <u>and</u> ask sizes," ¶ 32). Indeed, Plaintiff alternatively alleges that Defendants' conduct "artificially depressed AABB's share price," ¶ 23, and "artificially inflated [] prices," ¶ 18.  Moreover, according to Plaintiff's theory, *all* quoting activity by Defendants is purportedly evidence of manipulation that depressed AABB's share price: the placement of both *bids* and *asks* allegedly demonstrates "spoofing" (¶ 48); both *increasing* and *decreasing* a quoted price allegedly indicates market manipulation (¶¶ 32, 49); and both *increasing* and *decreasing* a quoted volume of shares is allegedly manipulative (¶ 36).  The Complaint also includes stray allegations that Defendants' conduct was "closely coordinat[ed]," ¶ 42, but offers no factual support for this collaboration, much less how either Defendant benefited from it.  In short, Plaintiff's theory is not "cogent," *Tellabs*, 551 U.S. at 314—it is incoherent.

The far more compelling inference is that Defendants' placements and adjustments of quotes for AABB stock reflected routine market making activity and trading activity conducted to facilitate order flow received from Defendants' clients. To the extent Plaintiff complains about "suppression" of its stock price, the far more compelling inference is that its weak stock price—which has hovered around $0.02 since 2023—reflects its lack of business strategy and weak financials, not Defendants' attempts to make markets for its stock.

## II.     The Complaint Fails to State a Claim for Market Manipulation Under NRS § 90.570.

Plaintiff alleges that the same conduct that violated the federal securities laws also violated NRS § 90.570, which imposes liability on a person who, in connection with the offer, sale, or purchase of a security, "[e]mploy[s] any device, scheme, or artifice to defraud," or "[e]ngage[s] in an act, practice, or course of business which operates or would operate as a fraud."  *See* ¶¶ 77, 251-69.  The Ninth Circuit has explained that Nevada "intended" its state securities law "to be interpreted

-27-          Case No. 2:26-cv-00175-FLA-MAA

consistently with the federal rule [10b-5]." *Shivers* v. *Arizona*, 670 F.2d 826, 831 (9th Cir. 1982). Accordingly, courts routinely dismiss securities fraud claims under Nevada law where, as here, they are based on the same allegations as deficient federal securities claims. *See id.* (dismissing Nevada securities claims "for the reasons discussed above in connection with plaintiffs' Rule 10b-5 claim"); *Coleman* v. *PNC Bank, N.A.*, 2025 WL 3101996, at *5 (D. Nev. Nov. 5, 2025) (analyzing federal and Nevada securities claims together and dismissing both for the same reasons); *Prime Mover Capital Partners LP* v. *Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 691 (S.D.N.Y. 2012) ("Plaintiffs' failure to adequately allege a Rule 10b-5 claim is dispositive of the [market manipulation] claim under [Nevada] Section 90.570.").

Additionally, Plaintiff must plead its state law claims with particularity under Rule 9(b) because they were filed in federal court. *See Kearns*, 567 F.3d at 1125. Plaintiff's failure to plead manipulative acts with particularity dooms its state law claims for the same reason it doomed its federal claims. *See Coleman*, 2025 WL 3101996, at *5 (dismissing NRS § 90.570 claims for failure to meet "heightened pleading standard" requiring "the time, the place, the identity of the parties involved, and the nature of the fraud"); *Kunio Tsutsumi* v. *Advanced Power Techs., Inc.*, 2013 WL 1953716, *6 (D. Nev. May 10, 2013). ).

## CONCLUSION

The Court should dismiss the Complaint with prejudice and, upon dismissal, engage in the mandatory review for "abusive litigation" required by 15 U.S.C. § 78u-4(c).

DATED:  April 24, 2026

Respectfully submitted,

By: */s/ Patrick J. Somers*
Andrew G. Gordon (*pro hac vice*)
Audra J. Soloway (*pro hac vice*)
Alison R. Benedon (*pro hac vice*
application forthcoming*)*
Daniel S. Sinnreich (*pro hac vice*)
Daniel A. Negless (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 6th Avenue
New York, NY  10019
agordon@paulweiss.com
asoloway@paulweiss.com
abenedon@paulweiss.com
dsinnreich@paulweiss.com
dnegless@paulweiss.com

Patrick J. Somers (SBN 318766)
Emma M. Tehrani (SBN 329603)
KENDALL BRILL & KELLY LLP
10100 Santa Monica Blvd., Suite 2500
Los Angeles, California  90067
Tel: (310) 272-7918
Fax: (310) 556-2705
psomers@kbkfirm.com
etehrani@kbkfirm.com

*Attorneys for Defendant Virtu
Financial, Inc.*

By: */s/ Peter G. Wilson*
Patrick Malley Smith  (SBN 326644)
Ashley Taylor Brines (SBN 322988)
KATTEN MUCHIN ROSENMAN
LLP
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA  90067-5010
Tel: 310-788-4400
Fax: 310-788-4471
patrick.smith@katten.com
ashley.brines@katten.com

Peter G. Wilson (*pro hac vice*)
Benjamin Levine (*pro hac vice*)
KATTEN MUCHIN ROSENMAN
LLP
525 W. Monroe Street
Chicago, IL  60661
Tel: 312-577-8106
peter.wilson@katten.com
benjamin.levine@katten.com

*Attorneys for Defendant GTS Securities*

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Patrick J. Somers, counsel of record for Virtu, certify that this brief contains 6,996 words, which complies with the word limit of L.R. 11-6.1.


DATED:  April 24, 2026                    Respectfully submitted,


                                          By:  */s/ Patrick J. Somers*
                                               Patrick J. Somers

-30-             Case No. 2:26-cv-00175-FLA-MAA

**ATTESTATION UNDER LOCAL RULE 5-4.3.4**

Pursuant to Local Rule 5-4.3.4, I attest that authorization in the filing of the foregoing document has been obtained from each of the other signatories.

DATED:  April 24, 2026          By:     /s/ *Patrick J. Somers*
                                        Patrick J. Somers

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT