Patrick J. Somers (SBN 318766)
Emma M. Tehrani (SBN 329603)
KENDALL BRILL & KELLY LLP
10100 Santa Monica Blvd., Suite 2500
Los Angeles, California 90067
Tel: (310) 272-7918
Fax: (310) 556-2705
psomers@kbkfirm.com
etehrani@kbkfirm.com

*Attorneys for Defendant Virtu Financial, Inc.*

[*Additional counsel listed on signature page*]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ASIA BROADBAND, INC. (AABB)

Plaintiff,

v.

VIRTU FINANCIAL, INC., GTS SECURITIES, G1 EXECUTION SERVICES, DOES 1-50, inclusive, and DOE Business Entities 1-50, inclusive,

Defendants.

Case No. 2:26-cv-00175-FLA-MAA

**MOTION FOR SANCTIONS BY DEFENDANTS VIRTU FINANCIAL, INC. AND GTS SECURITIES**

*[Concurrently filed with Declarations of Alison R. Benedon and Peter G. Wilson and [Proposed] Order]*

Date: October 9, 2026
Time: 1:30 P.M.
Location: First Street U.S. Courthouse, Courtroom 6B
350 W 1st Street, 6th Floor
Los Angeles, CA 90012

Action Filed: January 7, 2026
Trial Date: None Set
Assigned to: Hon. Fernando L. Aenlle-Rocha

## NOTICE OF MOTION AND MOTION FOR SANCTIONS

**PLEASE TAKE NOTICE** that on October 9, 2026, at 1:30 p.m. or as soon thereafter as the matter may be heard before the Honorable Fernando L. Aenlle-Rocha of the United States District Court for the Central District of California, in Courtroom 6B on the 6th Floor of the United States Courthouse located at 350 W. 1st Street, Los Angeles, California 90012, Defendants Virtu Financial, Inc. and GTS Securities shall move this Court for an order sanctioning Plaintiff Asia Broadband, Inc. ("Plaintiff" or "AABB") and its counsel Marc Steven Applbaum ("AABB's Counsel") for their misconduct and awarding Defendants their costs and attorneys' fees and other sanctions under this Court's inherent authority, the vexatious litigation statute (28 U.S.C. § 1927), and Local Rules 11-9 and 83-7.

## LOCAL RULE 7-3 STATEMENT

This Motion is made following the conference of counsel for Virtu and AABB's Counsel pursuant to L.R. 7-3, which took place by telephone on August 31, 2026, and subsequent email sent the same day. *See* Benedon Ex. A (Email from A. Benedon to M. Applbaum (Aug. 31, 2026)); *see also* Benedon Decl. ¶¶ 2–4.[1]

On September 2, 2026, counsel for GTS attempted to confer with AABB's Counsel regarding this Motion by telephone. Because there was no answer, counsel for GTS left a voicemail and sent an email to AABB's Counsel that same day. *See* Wilson Ex. A (Email from P. Wilson to M. Applbaum (Sept. 2, 2026)). Counsel for GTS again emailed AABB's Counsel on September 8, 2026, but AABB's Counsel did not respond. Wilson Ex. B (Email from P. Wilson to M. Applbaum (Sept. 8, 2026)); *see also* Wilson Decl. ¶¶ 2–5.

[1] "Benedon Ex." refers to the exhibits of the declaration of Alison R. Benedon ("Benedon Decl.") and "Wilson Ex." refers to the exhibits of the declaration of Peter G. Wilson ("Wilson Decl."), both of which are being filed contemporaneously with this Motion. All emphases are added and internal quotations marks/citations are omitted unless otherwise noted.

Despite the attempts by Defendants, AABB's Counsel did not agree to any additional conferences. The parties were not able to reach a resolution.

Dated: New York, NY
September 9, 2026

Respectfully submitted,

By: /s/ Patrick J. Somers
Andrew G. Gordon (*pro hac vice*)
Audra J. Soloway (*pro hac vice*)
Alison R. Benedon (*pro hac vice*)
Daniel S. Sinnreich (*pro hac vice*)
Daniel A. Negless (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
agordon@paulweiss.com
asoloway@paulweiss.com
abenedon@paulweiss.com
dsinnreich@paulweiss.com
dnegless@paulweiss.com

Patrick J. Somers (SBN 318766)
Emma M. Tehrani (SBN 329603)
KENDALL BRILL & KELLY LLP
10100 Santa Monica Blvd., Suite 2500
Los Angeles, CA 90067
Tel: (310) 272-7918
Fax: (310) 556-2705
psomers@kbkfirm.com
etehrani@kbkfirm.com

*Attorneys for Defendant*
*Virtu Financial, Inc.*

By: /s/ Peter G. Wilson
Patrick Malley Smith (SBN 326644)
Ashley Taylor Brines (SBN 322988)
KATTEN MUCHIN
ROSENMAN LLP
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010
Tel: 310-788-4400
Fax: 310-788-4471
patrick.smith@katten.com
ashley.brines@katten.com

Peter G. Wilson (*pro hac vice*)
Benjamin Levine (*pro hac vice*)
KATTEN MUCHIN ROSENMAN
LLP
525 W. Monroe Street
Chicago, IL 60661
Tel: 312-577-8106
peter.wilson@katten.com
benjamin.levine@katten.com

*Attorneys for Defendant GTS Securities*

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ iv

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 3

ARGUMENT ........ 7

I. Sanctions Are Proper Under the Court's Inherent Power. ........ 7

II. Sanctions Are Proper Under the Vexatious Litigation Statute. ........ 10

III. Sanctions Are Proper Under This District's Local Rules. ........ 11

CONCLUSION ........ 12

CERTIFICATE OF COMPLIANCE ........ 14

ATTESTATION UNDER LOCAL RULE 5-4.3.4 ........ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chambers* v. *NASCO, Inc.*,
501 U.S. 32 (1991) ... 7

*Cooter & Gell* v. *Hartmarx Corp.*,
496 U.S. 384 (1990) ... 7

*De Dios* v. *Int'l Realty & Invs.*,
641 F.3d 1071 (9th Cir. 2011) ... 10

*Disney Enters., Inc.* v. *VidAngel Inc.*,
2017 WL 6819882 (C.D. Cal. Oct. 5, 2017) ... 12

*Est. of Blas ex rel. Chargualaf* v. *Winkler*,
792 F.2d 858 (9th Cir. 1986) ... 7

*Fink* v. *Gomez*,
239 F.3d 989 (9th Cir. 2001) ... 7, 10

*In re Girardi*,
611 F.3d 1027 (9th Cir. 2010) ... 10

*Goodyear Tire & Rubber Co.* v. *Haeger*,
581 U.S. 101 (2017) ... 7

*Graham* v. *Dupont De Nemours, Inc.*,
2026 WL 40833 (C.D. Cal. Jan. 6, 2026) (Aenlle-Rocha, J.) ... 7, 12

*Great Dynasty International Financial Holdings Limited* v. *Haiting Li*,
2014 WL 3381416 (N.D. Cal. July 10, 2014) ... 8

*Lnu* v. *Blanche*,
177 F.4th 1014 (9th Cir. 2026) ... 9, 11

*R. Prasad Indus.* v. *Flat Irons Env't Sols. Corp.*,
2014 WL 4722487 (D. Ariz. Sept. 23, 2014),
*aff'd*, 673 F. App'x 676 (9th Cir. 2016) ... 11

*Steinert* v. *Winn Grp., Inc.*,
440 F.3d 1214 (10th Cir. 2006) ... 10

*Theodoropoulous* v. *Cnty. of Los Angeles*,
2014 WL 10987003 (C.D. Cal. Sept. 18, 2014) ........ 12

*Welk* v. *GMAC Mortg., LLC*,
850 F. Supp. 2d 976 (D. Minn. 2012) ........ 10

**Statutes**

15 U.S.C. § 78c(a)(38) ........ 3

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ........ *passim*

Vexatious Litigation Statute, 28 U.S.C. § 1927 ........ *passim*

**Other Authorities**

Local Rule 11-9 ........ 11, 12

Local Rule 83-7 ........ 11, 12

Federal Rule of Civil Procedure 11 ........ *passim*

Rule 41(a)(1) ........ 6, 7

Defendants Virtu Financial, Inc. ("Virtu") and GTS Securities ("GTS") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion for sanctions under this Court's inherent authority, the vexatious litigation statute (28 U.S.C. § 1927), and the Local Rules of the Central District of California.

## PRELIMINARY STATEMENT

Plaintiff Asia Broadband, Inc., through its counsel Marc Steven Applbaum, brought this utterly frivolous action—which it apparently had no intention of prosecuting—to shift the blame for AABB's abysmal stock performance to Defendants Virtu and GTS, two market makers with no business relationship with AABB. The Complaint contained almost no actual facts, was riddled with inconsistencies and made-up technical jargon, and was supported by 169 incomprehensible pages of purely AI-generated exhibits (as later confirmed by AABB's Counsel). ECF Nos. 1 & 1-1 (the "Complaint" or "¶ __"). Altogether, it alleged, in the most conclusory fashion, that Defendants engaged in market manipulation by "spoofing" AABB's stock. Upon filing its Complaint, AABB issued a press release announcing to its shareholders that it was "taking decisive action to protect its shareholders and the integrity of the public markets" by pursuing $250 million in damages from Defendants. Benedon Ex. B (AABB Press Release (Jan. 13, 2026)).

Defendants moved to dismiss, cataloging the myriad deficiencies in the Complaint and AABB's failure to adequately allege even a single required element of its claims. ECF No. 40 (the "Motion to Dismiss" or "MTD"). Rather than withdrawing the Complaint at that time, AABB filed an "opposition brief" that was—construed charitably—incoherent and incomplete. ECF No. 47 (the "Opposition" or "Opp."). The brief did not respond to any arguments Defendants made, nor did it engage with any of the cases Defendants cited. Instead, it responded to arguments Defendants did not make and was littered with bracketed placeholders that appear to

be unexecuted generative AI prompts.

Defendants filed a reply brief, arguing that: (i) the AI-generated Complaint and Opposition were not independently confirmed (or even reviewed, as relates to the Opposition) by AABB's Counsel; (ii) by failing to respond to any substantive argument, AABB conceded the Complaint's fatal deficiencies; (iii) AABB should not be permitted to amend its Complaint; and (iv) the Private Securities Litigation Reform Act (the "PSLRA") requires Rule 11 findings upon final adjudication, and sanctions were clearly warranted. ECF No. 48 (the "Reply"). AABB did nothing for weeks. Then, two days before oral argument—and after Defendants' preparation for oral argument was nearly complete—AABB filed a notice of voluntary dismissal, seemingly designed to avoid the sanctions that were clearly warranted under Rule 11. ECF No. 49.

Consistent with its practice of abusing the court system for its own public-relations purposes, AABB then issued a press release in which its CEO claimed that the dismissal resolved only "the initial pleading phase" and was intended to "allow[] [its] legal team to re-evaluate the matter and optimize [AABB's] overall legal strategy." Benedon Ex. D (AABB Press Release (Aug. 19, 2026)). AABB's press release also threatened "future legal action" after its legal counsel evaluated "additional trading data." *Id.*

If ever there were an appropriate case for sanctions, this would be it. AABB and its Counsel have shown a blatant disregard for Defendants, this Court, and the judicial system. Defendants respectfully request that the Court impose sanctions on AABB and its Counsel pursuant to this Court's inherent authority, the vexatious litigation statute, and this District's Local Rules, including an award for Defendants' reasonable attorneys' fees and an order dismissing AABB's Complaint with prejudice.

## BACKGROUND

**Plaintiff**. In its current iteration, AABB is a speculative crypto and mining company that has issued common stock whose price has hovered around one to two cents per share on the "over-the-counter" ("OTC") markets since 2023. AABB reported ***zero revenues*** from crypto in 2024 and 2025, despite spending more than $3 million in associated "development costs." *See* ECF No. 40-6 at 12, 26. AABB recently reported that it has "some concern about [its] ability to continue" operating. *Id.* at 23.

**Defendants**. Virtu and GTS are "market makers," *i.e.*, financial firms that publish quotes to buy and sell tens of thousands of different securities, including AABB's stock, to facilitate transactions by investors and make a market for those securities. *See* ¶¶ 2–4, 23, 27; 15 U.S.C. § 78c(a)(38). In recent years, Defendants (and a host of other market makers) have been the target of dubious market manipulation claims asserted by other penny stock companies.[2] While some of the cases have survived motions to dismiss, most are utterly frivolous copycat cases brought by failing companies looking to pin the blame for their poor performance on external factors, and several have been voluntarily dismissed.

**The Complaint**. AABB's Complaint is incomprehensible. It attempts to recycle the same market-manipulation claims from other lawsuits, but the Complaint and its exhibits are rife with nonsensical pseudo-technical jargon—including "endgame steering" and "micro stuffing"— which are not recognized legal or market concepts. *E.g.*, ¶¶ 9, 51, 90; ECF No. 1-1 at 52; *see also* MTD (describing defects).

---

[2] *E.g.*, *Genius Grp. Ltd.* v. *Citadel Secs. LLC*, No. 1:25-cv-09546-VEC (S.D.N.Y.) (voluntarily dismissed after the court refused to appoint lead plaintiff or lead counsel); *Global Tech Indus. Grp., Inc.* v. *Canaccord Genuity LLC*, No. 1:23-cv-02139-JGLC (S.D.N.Y.); *Nw. Biotherapeutics, Inc.* v. *Canaccord Genuity LLC*, No. 1:22-cv-10185-GHW-GWG (S.D.N.Y.); *see also Sports Ent. Gaming Glob. Corp.* v. *Virtu Fin. Cap. Mkts. LLC*, No. 36-374531-26 (Dist. Ct. of Tex.) (dismissed for failure to prosecute).

Construed most charitably, AABB claimed that Defendants' unexplained acts at unspecified times during June, July, and December 2025 manipulated AABB's two-cent share price.

Six days after filing the Complaint, AABB issued a press release touting this Action, claiming that it is "pursuing $250 million dollars [sic]." Benedon Ex. B. AABB's stock price more than doubled (increasing by about 140%) following this news. Benedon Ex. C (Chart of AABB's Stock Price).

**The Motion to Dismiss**. Defendants moved to dismiss the Complaint in its entirety, arguing that it identified no specific manipulative conduct or how any purported misconduct affected AABB's share price; it simply described in general terms that Defendants placed and adjusted quotes in OTC markets for AABB stock, which is the core part of a market maker's job. The Complaint did not attempt, even in a conclusory manner, to plead several essential elements of Plaintiff's claim. *See* MTD at 14–16; 24–26.

Substantive pleading deficiencies aside, the Complaint was riddled with inconsistencies and phantom references indicative of AI hallucinations. For example, the Complaint repeatedly referenced nine nonexistent lettered "exhibits" (*e.g.*, ¶¶ 108, 111, 120); a third "defendant" against whom there are no allegations (*see* ¶ 4); a "class period" even though this was not a class action (*e.g.*, ¶¶ 1–2, 21–22); and 18 numbered "statements" even though this case does not involve any "statements" (*see* ¶¶ 57–74). The Complaint contradicted its own theory of price suppression by simultaneously alleging that Defendants' conduct "inflated" AABB's share price. *See* MTD at 12, 27. Attached to the Complaint were 20 exhibits spanning 169 pages—which were indecipherable, laden with jargon, and devoid of facts. *See* MTD at 19–22. Some exhibits "summarize[d]" purported trade activity, listing purported trades of AABB stock and asserting that ***every*** identified trade was manipulative by describing the trades with confusing terms that Plaintiff does not define. *See, e.g.*, ECF No. 1-1 at 47–52. AABB's Counsel admitted that "analysts

used AI to create the exhibits" but did not represent that he had taken *any* steps to personally confirm their accuracy. *See* ECF No. 40-8.

**The Opposition**. Rather than dismissing or seeking to amend AABB's frivolous Complaint, AABB's Counsel filed an Opposition that offered ***no*** response and doubled down on the use of unvetted AI. *See generally* Opp. The brief failed to engage with any of Defendants' substantive arguments or Plaintiff's own claims. Beyond two pages of text copied nearly verbatim from the Complaint (*Compare* Opp. at 5–7 *with* ¶¶ 7–21), the Opposition did not mention Defendants' alleged conduct at all and did not contain a single citation to Defendants' Motion to Dismiss or any case it cited. *See generally* Opp. Nor did Plaintiff identify the correct pleading standard applicable to securities fraud claims. *Id.* The brief was also littered with placeholders that appear to be unexecuted AI prompts. A few such examples are copied below ***exactly as they appeared in the Opposition***:

- "The Complaint alleges specific facts regarding [CATEGORIES OF FACTUAL DETAIL: who, what, when, where, how]. [Compl. ¶¶ [PARAGRAPH NUMBERS]]. These are precisely the types of factual allegations that must be accepted as true and analyzed for plausibility." Opp. at 11.

- "THE COMPLAINT STATES A PLAUSIBLE CLAIM FOR [SECOND CAUSE OF ACTION] [DRAFTING GUIDANCE: Repeat the structure used for the first claim. Address the elements of the second cause of action, show how the Complaint's allegations satisfy each element, respond to Defendant's specific arguments regarding this claim, and include a policy rationale section. Tailor the analysis to the legal standards governing this particular claim.]." Opp. at 13.

- "Venue and Personal Jurisdiction Are Proper [If Defendant challenges venue under Rule 12(b)(3) or personal jurisdiction under Rule 12(b)(2): Address the specific challenge with citation to the Complaint's allegations and relevant

authority. Note that these defenses are waived if not raised in the first responsive pleading or motion.].” Opp. at 14.[3]

The Opposition also included arguments wholly irrelevant to the claims in this case. *See* Opp. at 12 (inexplicably discussing “the early dismissal of civil rights claims”). Even Plaintiff’s request for leave to amend was incomplete AI-generated boilerplate, stating only that “Plaintiff possesses additional factual allegations regarding [CATEGORIES OF ADDITIONAL FACTS] that would cure any pleading deficiency identified by the Court.” Opp. at 15.

**The Reply Brief**. Defendants’ Reply noted that the Complaint and Opposition were clearly AI-generated and had not been independently verified by AABB’s Counsel. ECF No. 48 at 2–3. Defendants argued that by failing to respond to the substantive arguments in the Motion to Dismiss, AABB abandoned its claims and the Complaint should therefore be dismissed ***with prejudice*** and leave to amend should be denied. *Id.* at 3–5. Finally, upon final adjudication, the PSLRA mandates that the Court make Rule 11 findings. *Id.* at 5–7. As such, the Reply asked the Court to impose sanctions requiring AABB and its Counsel to pay Defendants’ fees and costs. *Id.*

**Voluntary Dismissal.** For nearly a month after Defendants filed the Reply, AABB and its Counsel did nothing. They did not withdraw the clearly frivolous Opposition, nor did they offer any explanation for their egregious misconduct. Then, two days before the scheduled hearing, AABB’s Counsel filed a notice of voluntary dismissal under Rule 41(a)(1). ECF No. 49.[4] Shortly thereafter, Plaintiff issued yet another press release characterizing the dismissal as merely the conclusion of “the

---

[3] For the avoidance of doubt: Defendants ***had not*** challenged venue or personal jurisdiction.

[4] The dismissal notice incorrectly identified the forum as the “Southern District of California,” cited “Rule 41(1)(A)” rather than the correct rule: Rule 41(a)(1)(A)(i), and included a certificate of compliance that, while filed in August, was dated September 11, 2026. ECF No. 49.

initial pleading phase," and a "procedural action" which "allows [AABB's] legal team to re-evaluate the matter and optimize [its] overall legal strategy." Benedon Ex. D.

## ARGUMENT

### I. Sanctions Are Proper Under the Court's Inherent Power.

"[A] notice of dismissal under Rule 41(a)(1)" does not deprive the Court of its power to impose sanctions. *Cooter & Gell* v. *Hartmarx Corp.*, 496 U.S. 384, 395 (1990). Otherwise, a plaintiff could file baseless actions, force its adversaries to incur substantial expense, and evade consequences by dismissing when sanctions become imminent. District courts have inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co.* v. *Haeger*, 581 U.S. 101, 107 (2017). Courts may "impose attorney's fees as a sanction for bad-faith conduct" even where the conduct "could also be sanctioned under [the vexatious litigation] statute or [Rule 11]." *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 50 (1991). A court need only find "bad faith or conduct tantamount to bad faith." *Fink* v. *Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). This standard reaches "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose," *id.*, and is met "when an attorney knowingly or recklessly raises a frivolous argument," *Est. of Blas ex rel. Chargualaf* v. *Winkler*, 792 F.2d 858, 860 (9th Cir. 1986). "Frivolous filings are those that are both baseless and made without a reasonable and competent inquiry." *Graham* v. *Dupont De Nemours, Inc.*, 2026 WL 40833, at *5 (C.D. Cal. Jan. 6, 2026) (Aenlle-Rocha, J.).

The bad-faith nature of AABB's and its Counsel's conduct in this case is clear: they filed an AI-generated complaint with no factual basis that wholly ignores elements of the claim, filed an unchecked and incomplete AI-generated Opposition asserting frivolous (and irrelevant) arguments, waited to voluntarily dismiss the case until two days before the scheduled hearing, and then issued a press release claiming

the dismissal was all part of a broader legal strategy. *Supra* 3–6. At no point did AABB or its Counsel offer *any* explanation or contrition for its utterly frivolous, nonsensical, and unreviewed filings. While sanctions under the court's inherent authority are not imposed lightly, attorneys have been sanctioned for far less.

For example, in *Great Dynasty International Financial Holdings Limited* v. *Haiting Li*, the plaintiff filed a complaint asserting securities fraud claims even though the timing of plaintiff's purchases made damages impossible. 2014 WL 3381416, at *8 (N.D. Cal. July 10, 2014). The plaintiff voluntarily dismissed its frivolous securities fraud complaint before the court could make mandatory findings about its—and its counsel's—compliance with Rule 11 as is required under the PSLRA upon "final adjudication of the action." *See id.* at *5. The court explained that "counsel's conduct was reckless and frivolous because a ***reasonable and competent inquiry*** into the law would have revealed that" plaintiff's claims were barred. *Id.* at *7. Though the complaint had already been voluntarily dismissed, the court exercised its inherent authority to sanction plaintiff's counsel, emphasizing that they "acted recklessly in filing frivolous federal securities fraud claims without a basis in fact or in law," which is "tantamount to bad faith." *Id.* at *8.

The conduct here is much worse. Not only did AABB's Counsel fail to conduct a "reasonable and competent inquiry into the law" (with which he could have identified all the elements of its claims and the correct pleading standard), he apparently did not even conduct a "reasonable and competent inquiry" into his own filings. *Supra* 3–6. The Complaint was AI-generated and riddled with hallucinations, including references to nonexistent exhibits, a phantom third defendant, a "class period" in a non-class action, and made-up technical jargon. *Supra* 3–4. The Opposition reflects the same (or arguably worse) reckless and frivolous conduct tantamount to bad faith. AABB's Counsel did not even remove the unexecuted AI prompts from their brief, which included bracketed instructions to supply facts, and other drafting guidance. *Supra* 4–5; *see also Graham*, 2026 WL

40833, at *5 (finding "subjective bad faith" for filing brief "without evidence or arguments" supporting motion). Even after the Reply identified these issues, Plaintiff waited until two days before oral argument to dismiss its Complaint, forcing Defendants to expend legal fees on preparation for oral argument. *Supra* 6.

Plaintiff's post-dismissal press release seems to confirm its improper purpose. *See* Benedon Ex. D. AABB claimed that the dismissal was merely a strategic legal move that "allows [their] legal team to . . . optimize [their] overall legal strategy." *Id.* Putting aside whether AABB's press releases were themselves intended to manipulate the market, they certainly were intended to abuse the court system and are evidence of bad faith.

Meaningful sanctions are necessary to deter future misconduct and future nonsensical AI-generated court filings. The Ninth Circuit just recently warned about "the risks of overreliance on generative AI" and reminded members of the Bar about their obligation to "read everything cited in a court filing—whether drafted by generative AI or not." *Lnu* v. *Blanche*, 177 F.4th 1014, 1020 (9th Cir. 2026). AABB's Counsel—who has been put on probation with the California State Bar on two separate occasions[5]—plainly failed to follow this basic guidance or comply with his professional or ethical responsibilities. Without meaningful sanctions—including a conversion of the dismissal to one with prejudice—there is nothing discouraging AABB or its Counsel from filing yet another AI-generated complaint asserting more baseless claims. Indeed, Plaintiff's press release seems to confirm that it intends to refile similar claims. By Plaintiff's own admission, the dismissal

---

[5] AABB's Counsel is currently serving a two-year probationary period imposed by the California State Bar after he "admit[ted] culpability" in April 2025 for disclosing a client's confidential information in court filings without the client's informed consent. Benedon Exs. E–F (State Bar Court and California Supreme Court Filings re Case No. SBC-25-O-30285). In June 2020, the California State Bar previously imposed a one-year probationary period on AABB's Counsel for failing to deposit costs into client trust accounts. Benedon Exs. G–H (State Bar Court and California Supreme Court Filings re Case No. SBC-20-O-30299).

was merely a "procedural action" that ended "the initial pleading phase," while AABB and its legal team "determine the appropriate scope of future legal action." Benedon Ex. D. The Reply explained that the law is clear that AABB's abandonment of its claims in its Opposition warranted a dismissal with prejudice. Reply 5 (citing cases). AABB's voluntary dismissal should not allow it to evade both the Rule 11 findings required by the PSLRA and to salvage its claims in an attempt to replead. Such gamesmanship is unacceptable and further reflects Plaintiff's bad faith.[6]

## II. Sanctions Are Proper Under the Vexatious Litigation Statute.

Courts may impose "excess costs, expenses, and attorneys' fees" on any attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Sanctions are warranted where, as here, "attorneys recklessly rais[e] a frivolous argument which result[s] in the multiplication of the proceedings." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010). Defendants need not show intentional misconduct; "recklessness suffices for § 1927." *Fink*, 239 F.3d at 993. The Court should sanction AABB's Counsel for filing AABB's frivolous and incomplete Opposition and waiting for the eve of oral argument to dismiss the action, vexatiously multiplying the proceedings. *E.g.*, *Steinert* v. *Winn Grp., Inc.*, 440 F.3d 1214, 1225 (10th Cir. 2006) (affirming sanctions where plaintiff "oppose[d] the dismissal" of "patently meritless" claims); *Welk* v. *GMAC Mortg., LLC*, 850 F. Supp. 2d 976, 1005 (D. Minn. 2012) (sanctioning counsel for "continu[ing] to advocate frivolous claims" in opposition to motion to dismiss).[7]

---

[6] The refusal to confer with Defendants regarding this Motion, *supra* i–ii; Benedon Decl. ¶¶ 2–4; Wilson Decl. ¶¶ 2–5, is further evidence of bad faith.

[7] Because sanctions under Section 1927 are not available for initial pleadings, *De Dios* v. *Int'l Realty & Invs.*, 641 F.3d 1071, 1076 (9th Cir. 2011), Defendants only seek Section 1927 sanctions for the Opposition and delayed dismissal. However, the Court should use "its inherent authority to curb abusive litigation practices" by imposing sanctions based on AABB's Counsel's subsequent conduct. *Id.* Plaintiff's Complaint is sanctionable under the Court's inherent powers. *Supra* 6–9.

**Frivolousness**. "Although the Court did not rule on the merits of [Defendants'] 12(b)(6) motion to dismiss, examination of the record" shows that Plaintiff's filings "were both baseless and made without a reasonable and competent inquiry." *R. Prasad Indus.* v. *Flat Irons Env't Sols. Corp.*, 2014 WL 4722487, at *6 (D. Ariz. Sept. 23, 2014), *aff'd*, 673 F. App'x 676 (9th Cir. 2016). The Opposition's frivolity is clear: it invoked irrelevant legal standards, made just one passing reference to Defendants' alleged conduct, and failed to engage with even a single substantive argument (or case) in Defendants' Motion to Dismiss. *Supra* 4–5. Plaintiff's eventual dismissal further demonstrates the Opposition's frivolity. *Prasad*, 2014 WL 4722487, at *6 (imposing sanctions where the "voluntary withdrawal of the claim [is] evidence of the claim's legal or factual weakness").

**Recklessness**. The Opposition was beyond reckless. Even a quick review of the document makes clear that there are multiple placeholders and unexecuted AI prompts. *Supra* 4–5. No person—let alone a reasonable lawyer—who actually reviewed the Opposition would have filed it. Even putting aside the deficiencies that are readily apparent on the face of the filing, AABB's Counsel also acted recklessly by repeatedly citing the wrong legal standard, opposing arguments that Defendants never made, and referencing wholly irrelevant statutes. *Supra* 4–5. AABB's Counsel's unverified reliance on AI is especially concerning given the Ninth Circuit's recent warnings about the overreliance on AI. *Lnu*, 177 F.4th at 1020.

AABB's Counsel's "reckless[]," if not "knowing[]," Opposition and delayed dismissal "unreasonably and vexatiously multiplied the proceedings." *Prasad*, 2014 WL 4722487, at *4. The Court should impose sanctions on AABB's Counsel under Section 1927.

## III. Sanctions Are Proper Under This District's Local Rules.

Local Rule 11-9 provides that "[t]he presentation to the Court of frivolous . . . opposition to motions . . . subjects the offender at the discretion of the Court to the sanctions of L.R. 83-7." Local Rule 83-7 provides that "[t]he violation of or failure

to conform to any of these Local Rules may subject the offending party or counsel" to "(a) monetary sanctions, if the Court finds that the conduct was willful, grossly negligent, or reckless" and "(b) the imposition of costs and attorneys' fees to opposing counsel, if the Court finds that the conduct rises to the level of bad faith[.]" Here, the conduct of AABB and its Counsel warrants monetary sanctions and attorneys' fees and costs.

As detailed above (*supra* 4–5), AABB's and its Counsel's egregious Opposition easily satisfies the "willful, grossly negligent, or reckless" standard under Local Rule 83-7(a). *See, e.g.*, *Theodoropoulous* v. *Cnty. of Los Angeles*, 2014 WL 10987003, at *3 (C.D. Cal. Sept. 18, 2014) (imposing monetary sanctions because counsel's conduct in the action "violated numerous Local Rules" and was willful and grossly negligent). And the entire proceeding, when viewed in the context of Plaintiff's public relations campaign, was clearly filed in bad faith, making costs and attorneys' fees appropriate under L.R. 83-7(b). *Supra* 3–6; *see, e.g.*, *Disney Enters., Inc.* v. *VidAngel Inc.*, 2017 WL 6819882, at *3 (C.D. Cal. Oct. 5, 2017) (awarding attorneys' fees where plaintiff "chose to file a baseless motion").

## CONCLUSION

For the foregoing reasons, the Court should sanction (i) AABB and its Counsel under the Court's inherent authority, in the form of costs and attorneys' fees Defendants incurred in connection with this case and an order dismissing AABB's Complaint with prejudice; (ii) AABB's Counsel under 28 U.S.C. § 1927, in the form of costs, expenses, and attorneys' fees for filing the Opposition and then its belated voluntary dismissal; and (iii) AABB and its Counsel pursuant to Local Rule 83-7(a) and (b), for violating Local Rule 11-9.[8]

[8] Upon the Court's order, Defendants will submit a detailed fee application, detailing the reasonable expenses they have incurred. *Graham*, 2026 WL 40833, at *5 (imposing sanctions and requiring defendants to submit "evidence concerning the extent of [their] attorney's fees and costs").

DATED: September 9, 2026

Respectfully submitted,

By: /s/ Patrick J. Somers
Andrew G. Gordon (*pro hac vice*)
Audra J. Soloway (*pro hac vice*)
Alison R. Benedon (*pro hac vice*)
Daniel S. Sinnreich (*pro hac vice*)
Daniel A. Negless (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
agordon@paulweiss.com
asoloway@paulweiss.com
abenedon@paulweiss.com
dsinnreich@paulweiss.com
dnegless@paulweiss.com

Patrick J. Somers (SBN 318766)
Emma M. Tehrani (SBN 329603)
KENDALL BRILL & KELLY LLP
10100 Santa Monica Blvd., Suite 2500
Los Angeles, CA 90067
Tel: (310) 272-7918
Fax: (310) 556-2705
psomers@kbkfirm.com
etehrani@kbkfirm.com

*Attorneys for Defendant Virtu Financial, Inc.*

By: /s/ Peter G. Wilson
Patrick Malley Smith (SBN 326644)
Ashley Taylor Brines (SBN 322988)
KATTEN MUCHIN ROSENMAN LLP
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010
Tel: 310-788-4400
Fax: 310-788-4471
patrick.smith@katten.com
ashley.brines@katten.com

Peter G. Wilson (*pro hac vice*)
Benjamin Levine (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661
Tel: 312-577-8106
peter.wilson@katten.com
benjamin.levine@katten.com

*Attorneys for Defendant GTS Securities*

**CERTIFICATE OF COMPLIANCE**

I, Patrick J. Somers, counsel of record for Virtu, certify that this brief contains 3,887 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 9, 2026

Respectfully submitted,

By: */s/ Patrick J. Somers*
Patrick J. Somers

**ATTESTATION UNDER LOCAL RULE 5-4.3.4**

Pursuant to Local Rule 5-4.3.4, I attest that authorization in the filing of the foregoing document has been obtained from each of the other signatories.

DATED: September 9, 2026 By: */s/ Patrick J. Somers*
Patrick J. Somers