MARC STEVEN APPLBAUM, ESQ.
SBN# 222511
MIDWAY LAW FIRM APC
4275 Executive Square
Suite 200 La Jolla, CA
92037
marc@midwaylawfirm.com

Attorneys for Plaintiff
ASIA BROADBAND, INC. ("AABB")

**UNITED STATES DISTRICT COURT**

**IN THE CENTRAL DISTRICT OF CALIFORNIA**

ASIA BROADBAND, INC. ("AABB"),

Plaintiff,

vs.

VIRTU FINANCIAL INC., GTS SECURITIES, G1 Execution Services, DOES 1-50, inclusive, and DOE Business Entities 1-50, inclusive,

Defendants.

Case No: 26-CV-00175-FLA-MAA

**PLAINTIFFS RESPONSE TO DEFENDANTS VIRTU FINANCIAL INC AND GTS SECURITIES MOTION FOR SANCTIONS**

**Date: October 9, 2026**
**Time: 1:30PM**
**Location: First Street U.S Courthouse**
**Courtroom 6B**
**350 W 1rst Street, 6th Floor**
**Los Angeles, CA 90012**

**Action Filed: January 7, 2026**
**Voluntary Dismissal: August 12, 2026**
**Case Dismissed: August 12, 2026**

ASIA BROADBAND, INC ("AABB" or "Plaintiff") through counsel hereby submits its opposition to VIRTU FINANCIAL INC. and GTS SECURITIES LLC ("Defendants") motion for sanctions, as follows:

**Preliminary Statement**

Defendants Virtu Financial, Inc. and GTS Securities LLC ("Defendants") ask this Court to sanction Plaintiff Asia Broadband, Inc. and its counsel for exercising a right the Federal Rules confer without qualification, and for its counsel's failure to answer a handful of phone calls and two e-mails. Local Rule 7-3 obligates the party contemplating a motion to initiate contact with opposing counsel at least seven days before filing and to certify that attempt. That obligation runs to the movant — here, Defendants — not to AABB. The Rule imposes no freestanding duty on a non-moving party to answer calls or respond to emails on any particular schedule, and its own mechanism for an unresponsive counterpart is to permit the movant to certify the attempted contact and proceed with the motion, which is precisely what occurred here. Defendants identify no rule, order, or scheduled conference AABB's counsel is alleged to have violated. Whatever inference the Motion invites the Court to draw from counsel's silence, that silence does not, on this record, constitute a violation of any rule capable of supporting sanctions.

Stripped of its framing, the Motion identifies no evidence — as opposed to sequence and inference — that AABB or its counsel acted with the subjective bad faith or recklessness that inherent-authority and § 1927 sanctions require. As set forth below, the Motion's own internally stated standard for what trading activity and timing can prove is not met by the Motion's own intent argument; its

characterization of AABB as a "speculative" enterprise omits data adjacent to, and in one instance embedded in the same sentence as, the very language it quotes from its own cited exhibit; and its treatment of AABB's forward looking, cautioned press-release language as an admission runs directly counter to the safe harbor Congress enacted for exactly that category of statement.

Contrary to Defendants' motion for sanctions, *any* party who does not have a formal business agreement with another party *can* file a lawsuit against that party based on claims under the Securities Exchange Act of 1934, provided they meet the specific statutory requirements for standing and liability. There is no requirement of contractual privity or a formal business relationship between AABB and the Defendants to bring a claim under the Act; instead, standing and liability turn on the Plaintiff's status as a purchaser or seller of securities and the Defendant's substantial participation in the fraud as alleged in its lawsuit.

Under § 10(b) and Rule 10b-5, liability can be imposed on a host of potential defendants who do not have formal agreements with the plaintiff, as long as the participation of that defendant in the fraudulent scheme or device is "substantial".

Similarly, under Section 9 of the Securities Exchange Act of 1934, which prohibits manipulative transactions, any person who willfully participates in any prohibited act or transaction is civilly liable to "any person" who purchases or sells any security at a price affected by that manipulative act 15 USCS § 78i. This statutory liability does not depend on a contract or formal business agreement

between the manipulator and the injured investor 15 USCS § 78i.

This motion should be denied because AABB's Complaint alleged sufficient factual matters, accepted as true, to state plausible claims for relief under its applicable legal theories. Plaintiff's Complaint alleged key factual allegations construed in the light most favorable to Plaintiff, satisfies the Twombly/Iqbal plausibility standard, and established Plaintiff's entitlement to relief. *Zixiang Li v. Kerry*, 710 F.3d 995 (9th Cir. 2013). Defendants' motion for sanctions improperly invites this Court to weigh evidence, resolve factual disputes, and credit Defendant's version of events—none of which is appropriate for conclusions contained in Defendants' motion for sanctions. Further, stating the Complaint was "AI-generated" and not independently confirmed is disingenuous.

For the Defendants to include counsel's state bar history in its argument is disturbing and irrelevant as there is no prior discipline for "vexatious" conduct alleged in its motion for sanctions. (See attached Declaration of Marc Steven Applbaum). Lastly, for Defendants to characterize AABB as a "non-generating speculative crypto company" begs the question on how its own conduct impacted Plaintiff's revenue by engaging in its own pattern and practice of market manipulation tactics designed to artificially influence the price of securities owned

or traded by Plaintiff (and other companies) as alleged in its motion for sanctions. At no time has AABB shown a "blatant" disregard for Defendants or the court before or after dismissing its complaint without prejudice. On September 2, 2025, Attorney Peter G. Wilson sent counsel an email to discuss the payment of fees to "avoid motion practice", which sums up its gamesmanship in its motion for sanctions and desperate attempt to prevent AABB from refiling a revised complaint.

## BACKGROUND

Before reaching any sanctions standard, the Defendants' Motion background section describes AABB as "a speculative crypto and mining company" that "reported zero revenues from crypto in 2024 and 2025" and faces "some concern about its ability to continue operating." None of the governing standards — inherent authority, § 1927, or the Local Rules — turn on a litigant's size, revenue composition, or perceived speculation. This characterization is not a legal argument; it is background framing offered before the legal standard is reached. More significantly, the characterization is built on a selective reading of the exhibit the Motion itself cites (Document 40-6). The Motion cites pages 12 and 26 of that exhibit for the zero-crypto-revenue assertion. Page 12 is the Balance Sheet, reflecting a $3,043,314 capitalized asset — not a revenue figure; page 26 is a narrative note describing that same asset. The actual revenue line for digital tokens — showing zero for 2024 and 2025 — appears on page 13, the Statement of Operations, in the same table as Mineral Production Sales of $12,724,357 (2025)

and $7,995,862 (2024). The pages cited are the pages immediately surrounding, but not including, the one page that would have shown both figures together.

The going-concern citation presents a related problem. The Motion cites page 23 for language that in fact appears on page 24, and quotes only the closing clause of a single sentence that, in full, reads:

"Although the Company has significant capital available, obtained debt financing in previous years and had a small-scale mining production and mineral sales during the previous fiscal year to continue as a going concern, it has suffered losses in the current quarter and in the past and has no assurance of future profitability... there is some concern about the Company's ability to continue as a going concern."

The Motion quotes only the final clause; the opening clause — acknowledging significant capital, prior financing, and real mineral sales — is not carried into the Motion's characterization. Restoring the omitted figures — $12.7 million in mineral production revenue, growing nearly 60% year-over-year, against stockholders' equity that grew from approximately $123 million to $161 million over the same period — is inconsistent with the "speculative" characterization Defendants' ask the Court to accept, and the omission is not disclosed anywhere in the Motion. Nothing filed was fabricated, and the underlying document is exactly what it's represented to be.

A reader who sees only "zero revenue from crypto" and "some concern about its ability to continue operating," with nothing else, is left with the impression of a company that isn't really generating money and may not last — which is precisely the impression the "speculative crypto and mining company" label is built to create, before the court ever reaches any actual legal standard. Add

back the number that was left out — $12.7 million in mineral production sales, up nearly 60% year over year, against total stockholders' equity that grew from roughly $123 million to $161 million over the same period — and that impression doesn't survive. The company being described isn't struggling to generate revenue; one part of it hasn't generated revenue yet, while the part that has is growing. Leaving out the second half of that picture doesn't just make the characterization incomplete — it's what lets the "speculative" framing land as fact rather than as the one-sided reading it actually is, and it primes the reader to view everything that follows through the lens of a company already assumed to be in trouble.

## ARGUMENTS

### 1. Plaintiff Has an Absolute and Self-Executing Right to file a Voluntary Dismissal under Rule 41(a)(1) (A)(i)

Federal Rule of Civil Procedure 41(a)(1)(A)(i) permits a plaintiff to dismiss an action without a court order at any time before the opposing party serves an answer or a motion for summary judgment. The rule requires no justification, and a pending motion to dismiss is not among the two events — an answer or a summary-judgment motion — that terminate the right. AABB's dismissal, filed while Defendants' motion to dismiss remained pending and unresolved, was accordingly within its rights as a matter of the Rule's plain text. This does not end the inquiry, and AABB does not contend otherwise. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990) — a decision Defendants'

themselves cite — holds that a Rule 41(a)(1) dismissal does not divest a court of authority to decide a pending sanctions motion; the dismissal and the sanctions question are separate, collateral matters. The right to dismiss is accordingly a necessary but not sufficient answer to this Motion. The sufficient answer is that the underlying conduct does not meet the bad-faith or recklessness showing the governing authorities require, as addressed in further below.

**2. Defendants' Motion Fails to Demonstrate the Subjective Bad Faith or Recklessness Its Own Cited Authorities Require.**

Sanctions under the Court's inherent authority require a specific finding of subjective bad faith. Chambers v. NASCO, Inc., 501 U.S. 32 (1991). Section 1927 requires, at minimum, recklessness — a specific state of mind, not merely an unfavorable sequence of events. *Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001). Notably, the Ninth Circuit case Defendants cite for the bad-faith standard itself, Estate of Blas v. Winkler, 792 F.2d 858 (9th Cir. 1986), reversed the sanction under review, finding that comparable attorney conduct did not meet that standard. And both De Dios v. International Realty & Investments, 641 F.3d 1071 (9th Cir. 2011), and Steinert v. Winn Group, Inc., 440 F.3d 1214 (10th Cir. 2006), confirm that § 1927 sanctions cannot rest on the filing of the original complaint itself, but only on the later multiplication of proceedings — a limitation that, if applied here,

forecloses a substantial part of what the Motion seeks. The timeline the Motion offers is consistent with mishandling by counsel and an ordinary exercise of a dismissal right, and does not, without more, compel the bad-faith or reckless-intent inference the Motion asks the Court to draw.

**a. The Stock-Price Sequence Asserted in the Preliminary Statement Is Not Evidence of Intent.**

The Motion's Preliminary Statement asserts that AABB filed this action, which it "apparently had no intention of prosecuting," in order "to shift the blame for AABB's abysmal stock performance," and supports that assertion with a sequence: the Complaint was filed, a press release followed, AABB's stock price rose approximately 140%, and the case was later dismissed. No trading data showing who benefited from that price movement, no disclosed insider sales, and no internal communication tying the filing to the price reaction accompanies this sequence. A stock price rising on news of a large damages claim is an ordinary market reaction that does not, standing alone, distinguish a company that filed in bad faith from one that filed a claim in good faith and later reconsidered its viability.

**b. The Motion's Own Articulated Motion-to-Dismiss Standard Forecloses Its Intent Argument.**

The Motion's own text supplies the standard by which its intent argument should be measured — and by that standard, the argument fails. Describing the now-moot motion to dismiss, the Motion recounts Defendants' own position that AABB's Complaint "identified no specific manipulative conduct or how any purported misconduct affected AABB's share price," and that describing trading activity alone — without more — does not establish intent because such activity is "the core part of a market maker's job." "Defendants moved to dismiss the Complaint in its entirety, arguing that it identified no specific manipulative conduct or how any purported misconduct affected AABB's share price; it simply described in general terms that Defendants placed and adjusted quotes in OTC markets for AABB stock, which is the core part of a market maker's job." That is

Defendants' own articulated standard: a sequence of trading activity and a resulting price effect, without a showing of mechanism connecting the two, does not establish intent. On page 7 of the Motion, the Preliminary Statement asserts that AABB "had no intention of prosecuting" this action. The specific fact offered in support — the press release and the resulting 140% price increase — does not appear until page 10, one paragraph above Defendants' own statement of the standard quoted above. No mechanism connecting the filing to the price reaction

is offered beyond timing, which is the identical showing Defendants' own quoted standard treats as insufficient. The Motion's intent argument does not survive application of its own stated rule.

### 3. THE FEDERAL VEXATIOUS LITIGATION STATUTE IS NOT APPLICABLE TO AABB OR ITS COUNSEL

Defendants request sanctions under 28 U.S.C. § 1927, which permits a court to require an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" to personally satisfy the resulting excess costs and fees. That fee-shifting mechanism, confined to the case already before the Court, is distinct from the pre-filing-order doctrine under 28 U.S.C. § 1651(a) and the Court's inherent authority, which restrains a litigant's ability to file future actions and which the Ninth Circuit has repeatedly cautioned is an "extreme remedy" reserved for "exigent circumstances," imposed only after a showing that the litigant's claims are both numerous and "patently without merit." De Long v. Hennessey, 912 F.2d 1144 (9th Cir. 1990); Ringgold-Lockhart v. County of Los Angeles, 761 F.3d 1057 (9th Cir. 2014); Goolsby v. Cate, 2016 U.S. Dist. LEXIS 99689. Defendants seek no pre-filing order here, and make no attempt to satisfy that doctrine's showing. Section 1927 asks a narrower and different question, and it is that question the Court should answer. Under § 1927, sanctions require

conduct that "multiplied the proceedings" — generating work or delay beyond what the case already required — through action that was, at minimum, reckless. Fink v. Gomez, 239 F.3d 989 (9th Cir. 2001). Defendants direct this theory at two things: the timing of AABB's dismissal, and the quality of AABB's Opposition.

As to timing, Rule 41(a)(1)(A)(i) imposes no deadline governing when, relative to a pending motion or scheduled hearing, a plaintiff must exercise its unqualified right to dismiss. Defendants' own authority undercuts treating the timing itself as sanctionable: Steinert v. Winn Group, Inc., 440 F.3d 1214 (10th Cir. 2006), affirmed sanctions only for continued advocacy after the district court had already found the claims "patently meritless" and warned counsel directly — a predicate finding that never occurred here, since the motion to dismiss remained undecided when AABB dismissed. Absent that predicate, exercising a right the Rules concededly grant, at the time AABB chose to exercise it, is not "unreasonable and vexatious" multiplication; it is the ordinary and lawful conclusion of the very proceeding Defendants say was multiplied.

But § 1927 does not sanction recklessness standing alone. By its text, the statute shifts only the "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct" — a causation requirement that exists

independently of how the document's drafting is characterized. Even accepting Defendants' own characterization of the Opposition, solely for purposes of this argument, that characterization does not supply the showing § 1927 requires:

> "The Opposition's frivolity is clear: it invoked irrelevant legal standards, made just one passing reference to Defendants' alleged conduct, and failed to engage with even a single substantive argument (or case) in Defendants' Motion to Dismiss."

That characterization, even taken at face value, does not establish multiplication. The single round of briefing on Defendants' own motion to dismiss — a motion, an opposition, and a reply — was going to occur regardless of how the Opposition was written. Nothing about its quality added a second round of briefing, a continuance, additional discovery, or any other proceeding beyond the one already scheduled. A filing's drafting quality, however described, is not itself an additional proceeding, and § 1927 requires one.

To the extent Defendants instead point to the cost of bringing this Motion itself as the proceeding the Opposition generated, that reasoning proves too much: it would let any party manufacture the causation § 1927 requires simply by choosing to move against a filing it found objectionable. The excess-cost showing the statute requires is a but-for measure tied to the litigation the conduct is alleged

to have multiplied, consistent with the causation principle in Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101 (2017) (limiting compensatory sanctions under inherent authority to fees the innocent party would not have incurred but for the misconduct) — not the cost of a motion a party elects to file in response.

The Ninth Circuit defines vexatious litigation as litigation conducted "without reasonable or probable cause or excuse, harassing, or annoying..." *Goolsby v. Cate, 2016 U.S. Dist. LEXIS 99689*. Litigiousness alone is insufficient to support a finding of vexatiousness *Goolsby v. Cate, 2016 U.S. Dist. LEXIS 99689, Koshkalda v. Schoenmann (In re Koshkalda), 622 B.R. 749;* the litigant's claims must not only be numerous but also "patently without merit" *Goolsby v. Cate, 2016 U.S. Dist. LEXIS 99689, Wheeler v. United States, 2012 U.S. Dist. LEXIS 62996.* At no time has there been a pattern of harassment by AABB as this lawsuit was the first and only lawsuit filed against any defendant and there is no need for a filing prohibition as their lawsuit was dismissed prior to the exchange of emails.

**4. <u>RULE 11 NONCOMPLIANCE AND THE SAFE HARBOR RULE</u>**

Under *USCS Fed Rules Civ Proc R* 11, federal courts may impose appropriate sanctions on attorneys, law firms, or parties who present pleadings, written motions, or other papers to the court that are factually or legally frivolous,

or interposed for an improper purpose. *USCS Fed Rules Civ Proc R 11, Business Guides v. Chromatic Communications Enters., 892 F.2d 802*. In the Ninth Circuit, Rule 11 standardizes an objective measure of conduct, meaning subjective good faith is irrelevant to determining whether a violation occurred. *Business Guides v. Chromatic Communications Enters., 892 F.2d 802.* Rule 11 contains a mandatory "safe harbor" provision, which requires a party seeking sanctions to serve the motion on the opposing party and allow them a designated timeframe to withdraw or correct the challenged paper before the motion is filed with the court *USCS Fed Rules Civ Proc R 11, Avedisian v. Mercedes-Benz USA, LLC, 2014 U.S. Dist. LEXIS 2127*

At no time did the Defendants comply with *Rule 11* guidelines and are attempting to circumvent its compliance with the broad and vast "inherent powers" of the court. When Rule 11 sanctions are initiated by a party's motion, the safe harbor provision under Rule 11(c)(2) mandates strict compliance with the following procedural steps:

Separate Motion: The motion for sanctions must be made separately from any other motion or request and must describe the specific conduct that allegedly violates *Rule 11(b) USCS Fed Rules Civ Proc R 11, Holgate v. Baldwin, 425 F.3d 671* The motion must be served on the opposing party under *Rule 5 USCS Fed Rules Civ Proc R 11.*

The 21-Day Safe Harbor: The motion must not be filed with or presented to the court unless the challenged paper, claim, defense, contention, or denial is not withdrawn or appropriately corrected within 21 days after service (or another time set by the court) USCS Fed Rules Civ Proc R 11, *Islamic Shura Council of S. Cal.*

*v. FBI, 757 F.3d 870* The Ninth Circuit enforces this safe harbor provision strictly *Holgate v. Baldwin, 425 F.3d 671, Islamic Shura Council of S. Cal. v. FBI, 757 F.3d 870.* Informal warnings, such as letters or oral communications objecting to a conspiracy allegation or pleading, do not satisfy the strict requirement of serving the actual motion *Barber v. Miller, 146 F.3d 707, Radcliffe v. Rainbow Constr.Co., 254 F.3d 772*. To allow informal warnings or noncompliant motions to substitute for formal service would wrench both the language and purpose of the rule. *Barber v. Miller, 146 F.3d 707, Radcliffe v. Rainbow Constr. Co., 254 F.3d 772.*

The Motion treats a quotation from AABB's August 19, 2026 press release — that dismissal would allow counsel to "re-evaluate the matter and optimize (its) overall legal strategy" — as evidence of bad faith. The statement is attributed to AABB's Chief Executive Officer in an investor communication, not to litigation counsel, and is forward-looking in exactly the sense addressed by the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-5. A forward-looking statement paired with meaningful cautionary language is protected from being treated as evidence of fraud; the release identifies itself as containing forward- looking statements within the meaning of that Act in its own closing paragraph, alongside

the customary cautionary language the statute contemplates.

Independent of the safe harbor, treating this statement as evidence of "knowing" wrongdoing requires, under Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007), a strong inference of actual knowledge of falsity, or deliberate recklessness, at the time the statement was made. Ordinary, hedged, forward-looking language of the kind at issue does not, standing alone, satisfy that showing. Read in full, the release ties the re-evaluation to "additional trading data," not to any weakness in the pleadings, and says nothing about the conduct of AABB's counsel that forms the balance of the Motion.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion for Sanctions.

Dated: September 18, 2026

Respectfully submitted,

/s/ Marc Steven Applbaum
Marc Steven Applbaum, Esq.
Midway Law Firm APC

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2026, I served a true and correct copy of the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS

on all counsel of record via ECF electronic filing.

Dated: September 18, 2026

Respectfully submitted

s/s Marc Steven Applbaum